**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ALBERTO MENDEZ-GARCIA,
               *Petitioner*,

      v.

LORETTA E. LYNCH, Attorney
General,

              *Respondent*.

No. 15-71931

Agency No.
A070-095-653

---

MARIO RIVERA-BALTAZAR,
               *Petitioner*,

      v.

LORETTA E. LYNCH, Attorney
General,

              *Respondent*.

No. 13-72924

Agency No.
A098-382-970

OPINION

On Petition for Review of Orders of the
Board of Immigration Appeals

Argued and Submitted September 1, 2016
Pasadena, California

Filed October 20, 2016

Before:  Barry G. Silverman, Sandra S. Ikuta, and
Paul J. Watford, Circuit Judges.

Opinion by Judge Ikuta;
Concurrence by Judge Watford

## SUMMARY[*]

### Immigration

In consolidated cases, the panel denied Alberto Mendez-Garcia's and Mario Rivera-Baltazar's petitions for review from the Board of Immigration Appeals's decisions denying cancellation of removal because while petitioners' applications were pending their sons turned 21 and no longer met the definition of "child" under 8 U.S.C. § 1101(b)(1).

The panel held that the BIA reasonably interpreted 8 U.S.C. § 1229b(b)(1)(D) to require an alien applying for cancellation to establish hardship to a qualifying relative as of the time the Immigration Judge adjudicates the application. The panel thus held that the IJ in each case did not err in considering whether petitioners' sons were qualifying relatives as of the time of the decision on the application.

The panel held that petitioners' due process rights were not violated by the agency's failure to adjudicate their applications before their sons turned 21, by the denial of their

[*] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

applications for lack of a qualifying relative at the time of the IJ's final decision, or because their "settled expectations" that they could apply for and receive cancellation were upset by the change in status of their qualifying relatives.

The panel also held that Mendez-Garcia's due process right to a "fundamentally fair proceeding" was not violated by the application of the statutory cap on grants of cancellation pursuant to 8 U.S.C. § 1229b(e).

Judge Watford concurred, joining the court's opinion because it correctly resolved the cases, but writing separately to emphasize that the dispositive factor in denying petitioners' procedural due process claim was their lack of diligence in pressing for expedited review of their applications.

---

**COUNSEL**

Michael Joseph Codner (argued), Law Offices of Michael J. Codner, San Diego, California; Murray D. Hilts, San Diego, California; for Petitioners.

Jane T. Schaffner (argued), Trial Attorney; Holly M. Smith and Janice K. Redfern, Senior Litigation Counsel; Linda S. Wernery, Assistant Director; Benjamin C. Mizer, Principal Deputy Assistant Attorney General; Office of Immigration Litigation, Civil Division, United States Department of Justice, Washington, D.C., for Respondent.

---

**OPINION**

IKUTA, Circuit Judge:

Alberto Mendez-Garcia's application for cancellation of removal claimed that his removal would result in hardship to his son, who was a United States citizen under 21 years of age at the time of the application. *See* 8 U.S.C. § 1229b(b)(1)(D). Mario Rivera-Baltazar's application for cancellation of removal made the same claim with respect to his son, who was likewise a citizen who had not yet turned 21.[1] While these applications were pending, the petitioners' sons turned 21 and no longer met the statutory definition of "child," *see* 8 U.S.C. § 1101(b)(1). The Board of Immigration Appeals (BIA) held that because the petitioners' sons were no longer children, the petitioners had failed to show that their removal would result in a hardship to a qualifying relative, and therefore they were ineligible for cancellation of removal. Mendez-Garcia and Rivera-Baltazar petition for review of the BIA's denial of their applications. We have jurisdiction under 8 U.S.C. § 1252, and now deny their petitions for review.

I

We begin by describing the legal background. The Immigration and Nationality Act (INA) gives the Attorney General discretion to cancel the removal of an alien who is inadmissible or deportable from the United States. 8 U.S.C. § 1229b(b)(1). In order to be eligible for this relief, the alien must meet four statutory requirements, which include establishing "that removal would result in exceptional and

---

[1] These petitions are consolidated for purposes of disposition.

extremely unusual hardship to the alien's spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence." 8 U.S.C. § 1229b(b)(1)(D).**[2]** The INA defines "child" as "an unmarried person under twenty-one years of age" who additionally satisfies one of several criteria. *Id.* § 1101(b)(1).

---

**[2]** 8 U.S.C. § 1229b(b) provides, in pertinent part:

(b) Cancellation of removal and adjustment of status for certain nonpermanent residents

(1) In general  The Attorney General may cancel removal of, and adjust to the status of an alien lawfully admitted for permanent residence, an alien who is inadmissible or deportable from the United States if the alien—

(A) has been physically present in the United States for a continuous period of not less than 10 years immediately preceding the date of such application;

(B) has been a person of good moral character during such period;

(C) has not been convicted of an offense under section 1182(a)(2), 1227(a)(2), or 1227(a)(3) of this title, subject to paragraph (5); and

(D) establishes that removal would result in exceptional and extremely unusual hardship to the alien's spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence.

Section 1229b(b)(1)(D) does not directly identify the point in time when the alien's removal must result in a hardship to a qualifying relative. The section does not specify whether the alien's removal must result in a hardship at the time the alien receives a notice to appear, at the time the alien files the cancellation of removal application, at the time the immigration judge (IJ) adjudicates the application, or at some other time. The BIA has addressed this issue in two precedential decisions. *See Matter of Isidro-Zamorano*, 25 I. & N. Dec. 829, 830–31 (BIA 2012); *Matter of Bautista Gomez*, 23 I. & N. Dec. 893, 894 (BIA 2006). *Bautista Gomez* involved an alien whose parents had become lawful permanent residents (and thus qualifying relatives for purposes of § 1229b(b)(1)(D)) after the alien's application for cancellation of removal was initially denied. After her parents became lawful permanent residents, the alien filed a motion to reopen. The IJ had denied the motion because the alien did not have a qualifying relative at the time the alien received the notice to appear. *Bautista Gomez*, 23 I. & N. Dec. at 894. The BIA vacated the IJ's decision. It held that "an application for relief from removal is a continuing one," so that both the issue of good moral character, § 1229b(b)(1)(B), and "the issue of qualifying relatives" should be determined "as of the time an application for cancellation of removal is finally decided." *Id.* The BIA reasoned that "[o]therwise, such factors as the birth of a United States citizen child, marriage to a lawful permanent resident or citizen, or a serious accident or illness involving a qualifying relative could not be used as the basis for a motion to reopen to file, or to seek further consideration of, an application for cancellation of removal." *Id.* Because the alien's parents were qualifying relatives at the time the IJ adjudicated the alien's application for cancellation of

removal, the alien met the requirement in § 1229b(b)(1)(D). *Id*.

The BIA subsequently applied this rule in a decision involving an alien who lost his qualifying relative before his application was adjudicated. *See Isidro-Zamorano*, 25 I. & N. Dec. at 830–31. *Isidro-Zamorano* involved an alien whose application for cancellation of removal identified his son, a United States citizen, as his qualifying relative. The son was under 21 at the time the alien filed the application, but had turned 21 by the time the application was adjudicated. Noting its long-standing rule that an application for relief from removal is a continuing application, the BIA concluded that the alien "did not have a qualifying relative when the Immigration Judge adjudicated the application and therefore could not establish eligibility for relief." *Id.* at 831. *Isidro-Zamorano* recognized that the case presented "a difficult situation because [the alien] has lost his eligibility for relief" during the pendency of his application, while the alien in *Bautista Gomez* had acquired qualifying relatives during this period, and therefore benefitted from the BIA's interpretation of § 1229b(b)(1)(D). *Id.* at 831 & n.2. Nevertheless, the BIA concluded that it "must, of course, interpret the provision consistently" regardless whether the interpretation benefits or harms the alien's interests. *Id.* The BIA then reiterated its conclusion that the issue of qualifying relatives should be considered "at the time an application for cancellation of removal is decided," because "[o]therwise, factors arising subsequent to the filing of an application that may be favorable to the respondent's claim, such as the birth of a United States citizen child, marriage to a lawful permanent resident or citizen, or a serious accident or illness involving a qualifying relative, could not be considered in determining the existence of exceptional and extremely unusual hardship."

*Id.* at 830–31; *see, e.g.*, *Bautista Gomez*, 23 I. & N. Dec. at 894.

In addition to prescribing eligibility requirements for inadmissible or deportable aliens seeking cancellation of removal, *see* 8 U.S.C. § 1229b(b), the INA imposes an annual limit on the number of aliens who may receive cancellation relief. *See* 8 U.S.C. § 1229b(e)(1); *see also* 8 C.F.R. § 1240.21. Under the cap imposed by § 1229b(e)(1), "the Attorney General may not cancel the removal and adjust the status under this section . . . of more than 4,000 aliens in any fiscal year."

Even when an alien otherwise qualifies for relief and the annual number of grants has not been exhausted, "the ultimate decision whether to grant relief . . . rests with the Attorney General." *Romero-Torres v. Ashcroft*, 327 F.3d 887, 889 (9th Cir. 2003).

II

We next turn to the facts of these consolidated cases.

A

Alberto Mendez-Garcia is a citizen of Mexico who illegally entered the United States in 1990. Except for a brief absence in August 1991, he has resided continuously in the United States since his entry. While in the United States, Mendez-Garcia had two children; the younger was born in California on March 12, 1992. The record establishes that Mendez-Garcia had a criminal record. In 1996, Mendez-Garcia was arrested following a domestic dispute with his wife, but was not charged. In May 2008, Mendez-Garcia was

again arrested for a domestic dispute and pled nolo contendere to one count of domestic battery, *see* Cal. Penal Code § 243(e)(1), and one count of false imprisonment, *see id.* § 236. He was sentenced to 120 days in jail.

As a result of his conviction, Mendez-Garcia came to the attention of the Department of Homeland Security, which served him with a notice to appear on January 13, 2009. At an initial hearing on January 29, 2009, Mendez-Garcia requested that the hearing be postponed; the Immigration Court set a new hearing date in February. At the February hearing, Mendez-Garcia requested another postponement; the court set a third hearing date in March, which was rescheduled to April. Before this hearing, Mendez-Garcia moved to change venue from Phoenix, Arizona, to San Francisco, California. The motion was granted, and a hearing date was set for August 6, 2009.

Mendez-Garcia moved for a continuance until September 2009, and a hearing date was eventually set for October 1, 2009. At the hearing, the IJ set a December 30, 2009, deadline to apply for cancellation of removal and scheduled a merits hearing for January 19, 2011. Mendez-Garcia timely filed his application on December 16, 2009, but the merits hearing date was reset twice for reasons not explained in the record, first to February 6, 2012, and then to March 1, 2013.

At the scheduled hearing date in March 2013, the IJ held removal proceedings in Mendez-Garcia's case. After hearing testimony from Mendez-Garcia (who was represented by counsel) and reviewing the record, the IJ informed the attorneys that she had all the evidence she needed to make a decision, but because the annual limit on grants of cancellation of removal, *see* 8 U.S.C. § 1229b(e)(1), had

already been reached for the fiscal year, she was required by regulation, *see* 8 C.F.R. § 1240.21(c)(1), to reserve her decision until additional grants became available, which would likely be in October 2013. The IJ noted that Mendez-Garcia's younger son, his one remaining qualifying relative, would turn 21 before that date, and invited the parties to brief the issue whether the son's age should be counted at the time the record was closed or at the time the IJ's decision was made. Neither party filed a legal brief on this issue.

The IJ issued an oral decision in Mendez-Garcia's case on October 23, 2013. She noted that Mendez-Garcia's application was "a borderline case, with regard to both good moral character and exceptional and extremely unusual hardship," reasoning that Mendez-Garcia's 2008 domestic-violence conviction, to the extent it was not a per se disqualifying conviction under § 1229b(b)(1)(C), "may impugn [his] good moral character," and that the potential hardship to Mendez-Garcia's son was "extremely poorly documented." But because Mendez-Garcia's son had turned 21 on March 12, 2013, the IJ concluded that she need not determine whether Mendez-Garcia had established good moral character or whether his removal would "result in exceptional and extremely unusual hardship" to his son. § 1229b(b)(1)(D). Rather, the IJ determined that under *Isidro-Zamorano*, she was bound by the evidence as it existed at the time of her decision, and Mendez-Garcia was not eligible for cancellation of removal because he lacked a qualifying relative.

Mendez-Garcia appealed to the BIA. The BIA dismissed his appeal on June 5, 2015, holding that the IJ properly applied *Isidro-Zamorano* in ruling that Mendez-Garcia's son no longer met the statutory definition of "child" because he

had turned 21 before the IJ adjudicated his application. The BIA acknowledged that the IJ had closed the record on March 1, 2013 (before Mendez-Garcia's younger U.S. citizen child had turned 21), but concluded that this distinction from *Isidro-Zamorano* was not meaningful. Mendez-Garcia timely petitioned for review.

B

Mario Rivera-Baltazar is a citizen of Mexico who illegally entered the United States in 1986 and has resided in the United States continuously since then. While residing in the United States, his son was born on August 14, 1990, in California. In March 1996, Rivera-Baltazar was convicted of willful infliction of corporal injury upon a spouse or cohabitant. *See* Cal. Penal Code § 273.5.

Rivera-Baltazar was served with a notice to appear on January 7, 2005. On February 16, 2005, he filed a motion to change venue from Phoenix, Arizona, to San Diego, California, conceded removability, and stated his intention to seek cancellation of removal. After transferring venue, the IJ held an initial hearing on June 7, 2005. At that hearing, Rivera-Baltazar's counsel indicated that he was not yet prepared to go forward. The IJ set a second hearing for October 5, 2005.

At the October hearing, the government argued that Rivera-Baltazar was not eligible for cancellation of removal because his prior conviction rendered him ineligible. In support of this argument, the government introduced a criminal history transcript from the California Department of Justice showing Rivera-Baltazar's prior conviction. Rivera-Baltazar asked for a continuance to prepare a response to that

exhibit. At a third hearing, on December 13, 2005, the IJ overruled Rivera-Baltazar's objection to the government's exhibit, found him ineligible for cancellation of removal, and granted voluntary departure.

Rivera-Baltazar appealed to the BIA. After granting Rivera-Baltazar's request for an extension of the briefing schedule, the BIA rejected his appeal on August 15, 2006. Rivera-Baltazar moved the BIA to reopen the case on November 2, 2006, but the BIA denied the motion on January 11, 2007, in part because the motion was untimely. Rivera-Baltazar petitioned for review of both the BIA's merits decision and its denial of his subsequent motion to reopen.

While his petitions for review were pending before us, Rivera-Baltazar moved to extend his time to file his opening brief. We granted the extension and consolidated his petitions. Shortly thereafter, the BIA issued a precedential decision holding that convictions entered prior to September 30, 1996, did not preclude eligibility for cancellation of removal, *see Matter of Gonzalez-Silva*, 24 I. & N. Dec. 218 (BIA 2007). Because Rivera-Baltazar had been convicted of infliction of corporal injury in March 1996, the government moved to remand the case. We granted the unopposed motion and remanded the case to the BIA on December 6, 2007.

There the case languished until June 7, 2010, when the government filed a request for decision with the BIA. After receiving this request, the BIA set a briefing schedule, and ordered the parties to make their submissions by October 21, 2010. The government moved to remand at that time, but Rivera-Baltazar sought and received an extension until November 11, 2010. Following the government's lead,

Rivera-Baltazar filed an unopposed motion to remand the case to the IJ on November 4, 2010.

On remand from the BIA, the IJ held a hearing on May 26, 2011, and at that hearing set an application deadline of November 22, 2011, and the next hearing date for May 16, 2012. Rivera-Baltazar raised no objection to this schedule at the hearing, and subsequently requested an extension of the application deadline to December 22, 2011. This extension was granted, and Rivera-Baltazar timely filed his application for cancellation of removal on December 22, 2011.

On August 14, 2011, while Rivera-Baltazar's case was pending, his son turned 21. On May 16, 2012, the IJ issued its decision on Rivera-Baltazar's application, holding that because Rivera-Baltazar's son was no longer a child for purposes of § 1229b(b)(1)(D) and he had no other qualifying relative for cancellation purposes, he was not eligible for relief. The IJ denied his application for cancellation of removal and granted voluntary departure.

Rivera-Baltazar appealed to the BIA, which dismissed his appeal on August 13, 2013. As in Mendez-Garcia's case, the BIA held that the IJ properly applied *Isidro-Zamorano* in ruling that Rivera-Baltazar's son no longer met the statutory definition of "child" at the time of the IJ's decision. Rivera-Baltazar timely petitioned for review.

III

We start with the petitioners' argument that the IJ and BIA erred in holding they were not eligible for cancellation of removal under § 1229b(b)(1) because the BIA's interpretation of that statute in *Isidro-Zamorano* was

erroneous and inapplicable to their cases.  We review legal questions de novo, but when "there is 'binding agency precedent on-point' in the form of a published BIA opinion," we consider whether *Chevron* deference is appropriate. *Valenzuela Gallardo v. Lynch*, 818 F.3d 808, 813, 815 (9th Cir. 2016) (citing *Chevron U.S.A. Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984)).  "Under the familiar *Chevron* framework, we first ask 'whether Congress has directly spoken to the precise question at issue.'" *Id.* at 815 (quoting *Chevron*, 467 U.S. at 842).  If Congress has directly spoken to the precise question at issue, we "must give effect to the unambiguously expressed intent of Congress." *Garcia-Mendez v. Lynch*, 788 F.3d 1058, 1061 (9th Cir. 2015) (citing *Chevron*, 467 U.S. at 842–43).  If Congress has not so spoken, we proceed to step two, at which we will uphold the agency's interpretation as long as it is "based on a permissible construction of the statute."  *Valenzuela Gallardo*, 818 F.3d at 815.

## A

In addressing the petitioners' argument that the BIA's interpretation of § 1229b(b)(1)(D) is erroneous, we start with the plain language of the statute.  In order to be eligible for cancellation of removal, the alien must meet the four different requirements set forth in § 1229b(b)(1)(A) to (D).  Section 1229b(b)(1)(A) expressly includes a time frame: it requires the alien to establish that the alien "has been physically present in the United States for a continuous period of not less than 10 years immediately preceding the date" of the

application for cancellation of removal.[3]    However, the requirement at issue here, § 1229b(b)(1)(D), includes no such time frame.  It says only that the alien must establish "that removal would result in exceptional and extremely unusual hardship to the alien's spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence"; it does not specify that the alien must meet the requirement as of a certain time.  Because the statute does not directly address the question before us here, we turn to step two of *Chevron*.

At step two, we consider whether the BIA's interpretation is "based on a permissible construction of the statute." *Valenzuela Gallardo*, 818 F.3d at 815.  At this step, we conclude that the BIA could reasonably determine that § 1229b(b)(1)(D) requires an alien seeking cancellation to establish hardship to a qualifying relative as of the time the IJ adjudicates the alien's application.  The BIA's interpretation is consistent with the language of the statute.  Moreover, the BIA could reasonably determine that because Congress did not specify a time frame in § 1229b(b)(1)(D), as it did in § 1229b(b)(1)(A), Congress intended the alien to make the

---

[3] Although § 1229b(b)(1)(B) requires the alien to establish that the alien "has been a person of good moral character during such period," the BIA has determined that the IJ should determine the issue of good moral character as of the time the IJ renders a decision on the application for cancellation of removal. *See Matter of Ortega-Cabrera*, 23 I. & N. Dec 793 (BIA 2005).  We applied this rule in *Castillo-Cruz v. Holder*, 581 F.3d 1154 (9th Cir. 2009).  *But see Aragon-Salazar v. Holder*, 769 F.3d 699, 704, 706 n.4 (9th Cir. 2014) (stating that it was not "bound by this unreasoned conclusion" in *Castillo-Cruz*, and holding that identical language in section 203(1)(A)(iii) of the Nicaraguan Adjustment and Central American Relief Act, Pub. L. No. 105-100, 111 Stat. 2160, 2193–2201 (1997), "clearly refers back to the period of time for which continuous physical presence is required").

showing of a hardship to a qualifying relative at the time of the IJ's decision.

In opposing this conclusion, Mendez-Garcia and Rivera-Baltazar contend that the BIA's interpretation is not reasonable because it is inconsistent with § 1229b(b)(1)(A), which requires a showing that the alien "has been physically present in the United States for a continuous period of not less than 10 years immediately preceding the date of such application." The petitioners argue that if an application for cancellation of removal were a continuing application, as the BIA concluded, then an alien should continue to accrue physical presence until the application was adjudicated. According to the petitioners, because § 1229b(b)(1)(A) requires the IJ to consider a specified time frame (ending at the application date) for purposes of determining physical presence, the application for cancellation of removal is not a continuing application, and the IJ should likewise determine whether the alien has a qualifying relative at a prior time. This argument fails, because the requirement that an alien show continuous presence in the United States for "10 years immediately preceding the date" of an application for cancellation of removal, § 1229b(b)(1)(A), is distinct from the hardship requirement of § 1229b(b)(1)(D). "[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Andreiu v. Ashcroft*, 253 F.3d 477, 480 (9th Cir. 2001) (en banc) (alteration in original). The presence of a timing requirement in § 1229b(b)(1)(A) — and its corresponding absence in § 1229b(b)(1)(D) — does not foreclose the BIA's interpretation, but rather bolsters it.

Because the BIA offered a reasonable interpretation of § 1229b, the IJ in each case did not err in considering whether Mendez-Garcia and Rivera-Baltazar had a qualifying relative for purposes of the hardship requirement as of the time of the decision on the application for cancellation of removal.

B

Mendez-Garcia and Rivera-Baltazar also argue that the BIA's interpretation of § 1229b(b)(1)(D) does not apply to their cases because their cases are factually distinguishable from *Isidro-Zamorano*. We reject this argument. When an agency validly interprets a statute, that interpretation carries the "force of law." *See Garcia v. Holder*, 659 F.3d 1261, 1266 (9th Cir. 2011). Statutory interpretations offered by an agency through adjudication are not limited to the factual circumstances out of which that adjudication arose. "[A]n agency 'is not precluded from announcing new principles in an adjudicative proceeding and . . . the choice between rulemaking and adjudication lies in the first instance within the [agency's] discretion.'" *Miguel-Miguel v. Gonzales*, 500 F.3d 941, 950 (9th Cir. 2007) (omission and second alteration in original) (quoting *NLRB v. Bell Aerospace Co.*, 416 U.S. 267, 294 (1974)). Even assuming that *Isidro-Zamorano* and the precedents on which it relies are factually distinguishable from the situations here, the BIA's interpretation of the hardship requirement in § 1229b(b)(1)(D) would nonetheless be binding. *See Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 983 (2005) ("[T]he agency remains the authoritative interpreter (within the limits of reason) of [ambiguous] statutes.").

C

Finally, Mendez-Garcia and Rivera-Baltazar argue that the BIA erred in interpreting the word "child" in § 1229b(b)(1)(D) according to the statutory definition of "child" in § 1101(b)(1), rather than using the dictionary definition of child as "son or daughter." We disagree. "[W]hen a statute includes an explicit definition, we must follow that definition, even if it varies from that term's ordinary meaning." *Chubb Custom Ins. Co. v. Space Sys./Loral, Inc.*, 710 F.3d 946, 958 (9th Cir. 2013) (quoting *Stenberg v. Carhart*, 530 U.S. 914, 942 (2000)). Because 8 U.S.C. § 1101(b)(1) includes an "explicit definition" of the term "child," the statutory definition controls. *See, e.g.*, *Moreno-Morante v. Gonzales*, 490 F.3d 1172, 1178 (9th Cir. 2007) ("[C]ancellation of removal is appropriate only if the detailed statutory definition of 'child' is met.").

IV

Mendez-Garcia and Rivera-Baltazar next argue that the decisionmaking processes in their cases violated their due process rights. "It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Reno v. Flores*, 507 U.S. 292, 306 (1993). "A full and fair hearing is one of the due process rights afforded to aliens in deportation proceedings." *Gutierrez v. Holder*, 662 F.3d 1083, 1091 (9th Cir. 2011). An alien's right to procedural due process is violated "only if [1] the proceeding was 'so fundamentally unfair that the alien was prevented from reasonably presenting his case,'" and [2] the alien proves that "the alleged violation prejudiced his or her interests." *Id.* (quoting *Ibarra-Flores v. Gonzales*, 439 F.3d 614, 620 (9th Cir. 2006)). While aliens are entitled

to a procedurally fair hearing, "aliens have no fundamental right to discretionary relief from removal for purposes of due process and equal protection" because such relief is "a privilege created by Congress." *Tovar-Landin v. Ashcroft*, 361 F.3d 1164, 1167 (9th Cir. 2004). Denial of such discretionary relief "cannot violate a substantive interest protected by the Due Process clause." *Munoz v. Ashcroft*, 339 F.3d 950, 954 (9th Cir. 2003). Because "[c]ancellation of removal is a form of discretionary relief which does not give rise to a 'substantive interest protected by the Due Process Clause,'" *Hyuk Joon Lim v. Holder*, 710 F.3d 1074, 1076 (9th Cir. 2013) (quoting *Munoz*, 339 F.3d at 954), its denial likewise does not deprive an applicant of a constitutionally protected liberty or property interest.

The petitioners argue that their due process rights were violated because the application of *Isidro-Zamorano* coupled with the failure of the agency to adjudicate their cancellation of removal applications before their sons became 21 was procedurally unfair and deprived them of a substantive interest, their "settled expectations" in receiving relief. We consider their arguments in turn.

A

The petitioners first argue that the proceedings were procedurally unfair because they were deprived of the opportunity to have their applications for cancellation of removal adjudicated at a time when they would have had a meaningful opportunity for relief. Mendez-Garcia argues that because he had qualifying relatives at the time he filed his application for cancellation of removal in 2009, the fact that his application was not adjudicated until October 2013 "prevented [him] from reasonably presenting his relief

application." Similarly, Rivera-Baltazar argues that his son had five years of eligibility as a qualifying relative remaining at the time he applied for cancellation of removal, and that the lack of "an expedited review" in 2011 on remand from the BIA was "fundamentally unfair" and amounted to an "inequitable process."

We disagree. First, procedural delays, such as routine processing delays, do not deprive aliens of a substantive liberty or property interest unless the aliens have a "legitimate claim of entitlement" to have their applications adjudicated within a specified time. *Ruiz-Diaz v. United States*, 703 F.3d 483, 487 (9th Cir. 2012) (quoting *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972)). In *Ruiz-Diaz*, we considered a regulation that barred a category of aliens, including religious workers, from filing an application for adjustment of status under 8 U.S.C. § 1255(a) concurrently with a visa petition from a sponsoring employer. This category of aliens had to wait for approval of their employers' petitions before they could seek adjustment of status. Because of the delays inherent in acquiring approval of a visa petition, aliens subject to this regulation could be deprived of relief if their visas expired before their adjustment applications were adjudicated. A group of aliens lawfully present in the United States on five-year religious-worker visas brought suit against the government, asserting that the regulation, coupled with the processing delays, violated their due process rights. *Id.* We acknowledged that the delays "often mean that their five-year visas have expired before" their applications could be considered, which "makes it more difficult for plaintiffs to obtain" the relief they sought. *Id.* at 487–88. Nonetheless, we held that the aliens could not claim that their due process rights were violated because they had not identified a "'legitimate claim of entitlement' to have the petitions

approved before their visas expire." *Id.* at 487 (quoting *Roth*, 408 U.S. at 577); *see also Mudric v. Attorney Gen.*, 469 F.3d 94, 99 (3d Cir. 2006) (holding that an eight-year delay in the processing of an alien's application for asylum did not violate his due process rights "because [the alien] simply had no due process entitlement to the wholly discretionary benefits of which he and his mother were allegedly deprived, much less a constitutional right to have them doled out as quickly as he desired"). Here, Mendez-Garcia and Rivera Baltazar likewise lack any legitimate claim of entitlement to having their applications adjudicated before their sons turned 21. No statute or regulation requires the government to take action on their applications within a set period, nor does cancellation of removal "give rise to a 'substantive interest protected by the Due Process Clause.'" *Hyuk Joon Lim*, 710 F.3d at 1076 (quoting *Munoz*, 339 F.3d at 954). Therefore, the denial of their cancellation of removal applications due to the lack of a qualifying relative at the time of the IJ's final decision did not deprive them of a substantive right.

Nor did the agency's delays violate Mendez-Garcia's and Rivera-Baltazar's procedural due process rights by preventing them from reasonably presenting their cases at a meaningful time. *Cf. Singh v. Reno*, 182 F.3d 504 (7th Cir. 1999). In *Singh*, the Immigration and Naturalization Service (INS) "continued to drag its feet" in setting hearing dates and repeatedly canceled hearing dates over a four-year period, despite the alien's diligent efforts to have his hearing recalendared. *Id.* at 507. Only after Congress enacted a statute that retroactively eliminated any possibility of relief for that alien did the INS set a hearing date and summarily conclude that he was deportable. *Id.* at 510. While acknowledging that an alien generally "has no substantive right to have a claim heard at a particular time," the Seventh

Circuit held that under "the very unusual circumstance" when the alien, rather than the agency, pressed for a speedier resolution of his status, the alien had sufficiently raised a claim that his due process rights had been violated to allow him the "exceptional procedure" of "direct review of constitutional claims in the court of appeals." *Id.*

Even assuming that extraordinary delays caused by the agency could give rise to a constitutional claim, there were no such "very unusual circumstance[s]" in these cases. Neither Mendez-Garcia nor Rivera-Baltazar contend that the delays in their cases result from anything other than "routine processing times," *Ruiz-Diaz*, 703 F.3d at 487, and neither took action to increase the likelihood that their applications would be adjudicated before their sons turned 21, *cf. Singh*, 182 F.3d at 511 (finding "of crucial significance" that "it was [the alien] who pressed to have the matter resolved"). Indeed, Mendez-Garcia sought to postpone the adjudication of his application three times before his younger U.S. citizen child turned 21. Even when the IJ brought to Mendez-Garcia's attention the imminence of his child's twenty-first birthday and offered him the opportunity to submit supplemental briefing on the issue, he did not do so. Similarly, Rivera-Baltazar did not act when we remanded his case to the BIA in 2007; the BIA ultimately took action only after the government (not Rivera-Baltazar) filed a request for decision. Rather than seeking to expedite the adjudication of his application, Rivera-Baltazar sought to postpone it four times before his child turned 21. We conclude that the decisionmaking process here did not violate Mendez-Garcia's and Rivera-Baltazar's due process rights.

B

Mendez-Garcia and Rivera-Baltazar also argue that their due process rights were violated because they had "settled expectations" that they could apply for and receive cancellation of removal, and these settled expectations were upset by the change in the status of their qualifying relatives. In making this argument, Mendez-Garcia and Rivera-Baltazar analogize to *INS v. St. Cyr*, 533 U.S. 289 (2001), which considered the retroactive effect of section 304 of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), Pub. L. No. 104-208, 110 Stat. 3009-546, 3009-587–3009-597.

In order to analyze the strength of this analogy, we briefly summarize the relevant facts and conclusion in *St. Cyr*. As the Supreme Court explained, section 304 eliminated 8 U.S.C. § 1182(c), which gave the Attorney General broad discretion to waive deportation of aliens who had prior criminal convictions, and replaced it with § 1229b, which accorded much narrower discretion to the Attorney General to cancel removal of certain aliens, but not of aliens who had been convicted of an aggravated felony, *see* § 1229b(b)(1)(C). Prior to IIRIRA's effective date, the alien in *St. Cyr* had pled guilty to sale of a controlled substance. He became deportable as a result of the conviction, but he also preserved his eligibility for waiver of deportation relief under § 1182(c) by pleading guilty. 533 U.S. at 293. IIRIRA, which took effect before his application for § 1182(c) relief was adjudicated, *id.*, made his crime an aggravated felony and thus made him statutorily ineligible for cancellation of removal, *id.* at 297. The alien argued that because he had pled guilty in reliance on pre-IIRIRA law, applying IIRIRA to deny his application for relief was

impermissibly retroactive. *Id.* at 314–15. The Supreme Court agreed. Applying the two-step analysis of *Landgraf v. USI Film Products*, 511 U.S. 244 (1994), the Court first held that IIRIRA did not contain an "unambiguous direction" demanding retroactive application, *St. Cyr*, 533 U.S. at 316, 320. It then determined that because aliens who had pled guilty "waive[d] several of their constitutional rights" in exchange for preserving their eligibility for § 1182(c) relief, applying IIRIRA retroactively to deny those aliens the possibility of relief for which they had bargained would impermissibly impair "vested rights acquired under existing laws . . . in respect to transactions or considerations already past." *Id.* at 321–22.

As this summary makes clear, *St. Cyr* is not applicable here. *Landgraf* emphasized that "[t]he Due Process Clause . . . protects the interests in fair notice and repose that may be compromised by retroactive legislation," 511 U.S. at 266, and *St. Cyr* accordingly discusses "settled expectations" as they related to retroactive application of IIRIRA, *see* 533 U.S. at 323–24. Mendez-Garcia and Rivera-Baltazar do not point to any legislative change; there was no amendment to the cancellation of removal statute or other legislation that could raise due process concerns under *Landgraf* and *St. Cyr*. Whereas *St. Cyr* indicated that it is sometimes impermissible to apply new law to "transactions or considerations already past," *id.* at 321, nothing in *St. Cyr* suggests that it is impermissible to apply unchanged law to a current factual situation as it has changed or developed over time. Further, *St. Cyr* made clear that "settled expectations" result only when an alien gives up "valuable legal rights." *Jimenez-Angeles v. Ashcroft*, 291 F.3d 594, 602 (9th Cir. 2002) (quoting *St. Cyr*, 533 U.S. at 321). Mendez-Garcia and Rivera-Baltazar gave up no such legal rights in applying for

cancellation of removal. *Cf. id.* (finding that alien who had turned herself into the INS "gave up only her ability to continue living illegally and undetected in the United States," and not any valuable legal rights). Nor can Mendez-Garcia and Rivera-Baltazar claim they lacked notice that their children would grow up. Accordingly, we reject Mendez-Garcia and Rivera-Baltazar's claim that they have a due process right to have their applications adjudicated in light of historical facts.

C

Mendez-Garcia raises one additional argument that his due process rights were violated by the proceedings.[4] According to Mendez-Garcia, the application of the statutory cap on grants of cancellation of removal, § 1229b(e), violated his due process right to a "fundamentally fair proceeding" because it was unfair for the IJ to close his proceedings, despite having everything she needed to make a decision, and such unfairness was prejudicial in that his son ceased being a qualifying relative soon after.

To the extent Mendez-Garcia is challenging Congress's authority to enact a statutory cap on relief from deportation, we reject the argument. "'[O]ver no conceivable subject is the

---

[4] In a letter submitted the day before oral argument under Federal Rule of Appellate Procedure 28(j), Mendez-Garcia raised the additional argument that the government's implementation of the statutory cap violates his equal protection rights because it treats non-detained applicants for cancellation of removal and detained applicants differently. Because Mendez-Garcia did not raise this argument in his opening brief, we deem this issue waived. *See Rizk v. Holder*, 629 F.3d 1083, 1091 n.3 (9th Cir. 2011). We accordingly deny Mendez-Garcia's pending motion for leave to exceed the word limit on Rule 28(j) letters as moot.

legislative power of Congress more complete than it is over' the admission of aliens." *Fiallo v. Bell*, 430 U.S. 787, 792 (1977). "Congress has plenary power to regulate immigration and the conditions on which aliens remain in the United States." *Korab v. Fink*, 797 F.3d 572, 574 (9th Cir. 2014). When Congress acts in the immigration context, the resulting legislation need "meet only 'the (unexacting) standard of rationally advancing some legitimate governmental purpose.'" *Lopez-Valenzuela v. Arpaio*, 770 F.3d 772, 788 (9th Cir. 2014) (en banc) (quoting *Flores*, 507 U.S. at 306). A statutory cap on grants of cancellation of removal is rational; Congress could have concluded, for example, that immigration benefits should generally be reserved for aliens who are not otherwise removable. Moreover, limiting the number of otherwise-removable aliens who are permitted to remain in the United States is a legitimate governmental purpose, one that the statutory cap rationally advances.

Nor did the application of the cap to Mendez-Garcia violate his due process rights. In order to assert a due process challenge to such a condition of relief, an alien must establish a "qualifying liberty interest of which he was deprived." *Hernandez-Mezquita v. Ashcroft*, 293 F.3d 1161, 1165 (9th Cir. 2002) (citing *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976)). Mendez-Garcia has no such liberty interest. Discretionary immigration relief gives rise to no "substantive interest protected by the Due Process Clause." *Hyuk Joon Lim*, 710 F.3d at 1076. Nor did Congress provide aliens with such an interest. When cancellation of removal was established as a form of relief under IIRIRA, Congress circumscribed its availability not only by specifying the four requirements that an alien must satisfy but also by including the statutory cap. *See* IIRIRA § 304(a), Pub. L. No. 104-208, 110 Stat. at 3009-594, 3009-596. Thus, "the very liberty

interest [Mendez-Garcia] asserts to have been taken away" by the statutory cap, his ability to receive cancellation of removal, "was granted by [the] same statute" that instituted the cap — IIRIRA section 304. *Hernandez-Mezquita*, 293 F.3d at 1165. Though the statutory cap may have deprived Mendez-Garcia of the ability to receive cancellation of removal relief, the right to receive that relief unrestricted by the cap was "a right he never had." *Id.* This due process challenge, too, fails.

## PETITIONS DENIED.

WATFORD, Circuit Judge, concurring:

I join the court's opinion because it correctly resolves the two cases before us. I write separately to emphasize that, for me at least, the dispositive factor in denying relief on the petitioners' procedural due process claim is their lack of diligence in pressing for expedited review.

The petitioners' due process claim arises from delays in the processing of their applications for cancellation of removal based on hardship to their U.S. citizen children. *See* 8 U.S.C. § 1229b(b)(1)(D). Delay can be fatal to these applications because, under the rule adopted by the Board of Immigration Appeals (BIA), an applicant loses eligibility for this relief if his child turns 21 before the agency has made a decision on the application. *See Matter of Isidro-Zamorano*, 25 I. & N. Dec. 829, 831 (BIA 2012). The consequences for those who lose their eligibility are severe: An applicant granted cancellation of removal attains the status of a lawful permanent resident, a status he keeps even after his U.S.

citizen child turns 21, whereas an applicant denied such relief is subject to removal from the United States and often barred from returning for ten years.  *See* 8 U.S.C. §§ 1182(a)(9)(B)(i)(II), 1229b(b)(1).

As the court acknowledges, an arbitrary and unjustified delay in processing an application for cancellation of removal can serve as the basis for a successful due process claim, provided the applicant has been diligent throughout in urging the agency to reach a decision before his child turns 21.  The petitioners before us cannot establish a violation of their due process rights because they were not diligent in pressing for expedited review of their applications.  Had they been diligent in doing so, however, they might well have been entitled to prevail.

Take Mario Rivera-Baltazar's case.  The immigration judge who initially ruled on his application denied it on an erroneous legal ground, and our court subsequently remanded the case to the BIA for further proceedings.  At that point, Rivera-Baltazar's U.S. citizen son was 17 years old, so there was plenty of time left for his application to be considered. Because the immigration judge did not reach the merits of Rivera-Baltazar's application during the initial round of proceedings, his case necessarily had to be remanded back to the immigration judge.  Yet the BIA sat on his case for three years and did nothing.  Unlike my colleagues, I do not think we can characterize that as a routine processing delay (particularly for such a ministerial task), and as far as the record discloses there was absolutely no justification for it.

The problem for Rivera-Baltazar is that he did nothing during that entire three-year period of delay to try to expedite review of his application.  As the court notes, it was the

*government's* action after nearly three years of unexplained delay that finally prompted the BIA to do what it should have done right away: remand the case back to the immigration judge. Had Rivera-Baltazar been diligent in urging the BIA to remand his case forthwith, and had he lost his eligibility for cancellation of removal due to the unjustified delay, what more could be required to assert a meritorious due process claim?

The protections of the Due Process Clause are vital in cases like these because there is enormous potential for arbitrariness and hence unfairness under the rule adopted by the BIA. Under that rule, an applicant's eligibility for relief can be foreclosed by administrative delays that are wholly outside the applicant's control and that have nothing to do with the merits of the application. The potential for arbitrariness is heightened in the cancellation of removal context because a person eligible for such relief may not affirmatively apply for it—she may request it only after the government decides to initiate removal proceedings by serving her with a notice to appear. So from the outset the applicant cannot control how old her U.S. citizen child may be at the time her application is filed, and she of course has no ability to stop the clock from ticking as her child approaches the age of 21. When an applicant does everything in her power to ensure that the agency can adjudicate her application for cancellation of removal while her U.S. citizen child is still under 21, the agency cannot simply allow the application to languish for years without justification such that the child ages out before a decision can be rendered.

Due process guarantees "a full and fair hearing" in immigration proceedings. *Colmenar v. INS*, 210 F.3d 967, 971 (9th Cir. 2000). A hearing for relief surely cannot be

considered full and fair if the adjudicator arbitrarily and unjustifiably withholds a decision until a time when the relief is no longer available. *See Singh v. Reno*, 182 F.3d 504, 510 (7th Cir. 1999).