# Matter of Sandra IBARRA-VEGA, Respondent

*Decided February 27, 2026*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

(1) When a U nonimmigrant visa is not immediately available to a respondent and the record does not establish that one is likely to be available in the reasonably near future, administrative closure over the Department of Homeland Security's objection is inappropriate.

(2) The Board's statement in *Matter of B-N-K-*, 29 I&N Dec. 96, 99 (BIA 2025), that administrative closure is only appropriate for "a reasonably short period of time" applies in the context of both the initial decision to administratively close a case and the decision to recalendar a case.

(3) The Board and Immigration Judges have no authority to use administrative closure as a de facto extra-statutory form of relief that effectively grants amnesty to thousands of removable aliens because they may be eligible for a visa sometime in the future.

FOR THE RESPONDENT:  Milva V. Lehm, Esquire, Phoenix, Arizona

FOR THE DEPARTMENT OF HOMELAND SECURITY:  Conor McNulty, Assistant Chief Counsel

BEFORE:  Board Panel:  MONTANTE, OWEN, and GALLOW, Appellate Immigration Judges.

OWEN, Appellate Immigration Judge:

The Department of Homeland Security ("DHS") has filed an interlocutory appeal from the Immigration Judge's September 16, 2025, decision denying its motion to recalendar these removal proceedings. The respondent, a native and citizen of Mexico, opposes the appeal. The appeal will be sustained, the Immigration Judge's decision will be vacated, the proceedings will be recalendared, and the record will be remanded to the Immigration Judge.

Although we do not usually entertain interlocutory appeals, we deem it appropriate to do so here to ensure proper application of the regulations governing the recalendaring of administratively closed cases. *See Matter of Cahuec Tzalam*, 29 I&N Dec. 300 (BIA 2025) (adjudicating interlocutory appeal from a decision granting administrative closure). Whether administrative closure or recalendaring of removal proceedings is

appropriate is a discretionary issue we review de novo.  *See id.* at 301; 8 C.F.R. § 1003.1(d)(3)(ii) (2026).

## I.  FACTUAL AND PROCEDURAL HISTORY

Removal proceedings commenced against the respondent in 2010.  On August 30, 2013, DHS filed a motion to administratively close these proceedings in the exercise of its prosecutorial discretion, which the respondent did not oppose.  The Immigration Judge granted the motion for administrative closure on September 4, 2013.  On May 4, 2018, the respondent filed a petition for a nonimmigrant visa under section 101(a)(15)(U) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101(a)(15)(U) (2018), ("U visa") with United States Citizenship and Immigration Services ("USCIS").

On June 26, 2025, DHS filed a motion to recalendar the removal proceedings before the Immigration Judge.  In its motion, DHS explained that the respondent's U visa petition remained pending and argued that recalendaring was appropriate to resolve the removal proceedings on the merits.  The respondent opposed DHS' motion and submitted a receipt notice showing that she filed a U visa petition with USCIS.  The Immigration Judge denied DHS' motion based on the pendency of the U visa petition.  The present appeal followed.

## II.  DISCUSSION

"Administrative closure is intended to be a docket management tool 'used to temporarily remove a case from an Immigration Judge's active calendar or from the Board's docket.'"  *Matter of B-N-K-*, 29 I&N Dec. 96, 97 (BIA 2025) (quoting *Matter of W-Y-U-*, 27 I&N Dec. 17, 17–18 (BIA 2017)).  "It is not a form of relief from removal, does not provide an alien with any immigration status, and is not intended to be used to delay proceedings indefinitely."  *Id*.; *see also* 8 C.F.R. § 1003.18(c) (2026) ("Administrative closure is the temporary suspension of a case.").[1]  After a case has been administratively closed, either party may move to recalendar the case. 8 C.F.R. § 1003.18(c)(2).  When a motion to recalendar is opposed by the nonmoving party, an Immigration Judge must consider the totality of the circumstances in deciding whether to grant the motion as a matter of

---

[1]  The regulation at 8 C.F.R. § 1003.18(c) governs administrative closure and recalendaring by Immigration Judges.  The Board is governed by a materially identical regulation at 8 C.F.R. § 1003.1(l) (2026).

discretion, including any relevant factors listed at 8 C.F.R. § 1003.18(c)(3)(ii). *See* 8 C.F.R. § 1003.18(c)(2)–(3).

We have previously discussed the factors Immigration Judges should consider in deciding whether to delay removal proceedings based on a pending U visa petition in the context of a continuance request. *See Matter of Sanchez Sosa*, 25 I&N Dec. 807 (BIA 2012). Although administrative closure and continuance requests are governed by separate regulatory standards, *compare* 8 C.F.R. § 1003.18(c), *with* 8 C.F.R. § 1003.29 (2020), they are related procedural mechanisms. *See Vahora v. Holder*, 626 F.3d 907, 918 (7th Cir. 2010) (observing that a continuance is the "procedural device most closely akin" to administrative closure).

In *Matter of Sanchez Sosa*, we held that, "[a]s a general rule, there is a rebuttable presumption that an alien who has filed a prima facie approvable [U visa petition] with the USCIS will warrant a favorable exercise of discretion for a continuance for a reasonable period of time." 25 I&N Dec. at 815. The factors of prima facie approvability and a reasonable time limit for continuance based on a pending U visa are consistent with the relevant factors considered in the context of administrative closure and recalendaring. *See* 8 C.F.R. § 1003.18(c)(3)(i)(D)–(E), (ii)(C)–(F) (listing the likelihood of success on the pending collateral matter and the "anticipated duration of the administrative closure" as relevant factors); *see also Matter of Cahuec Tzalam*, 29 I&N Dec. at 302 (explaining that when "a request for administrative closure is based on the pendency of a collateral matter, there must be 'some foreseeable resolution to the ongoing proceedings within a reasonably short period of time'" (quoting *Matter of B-N-K-*, 29 I&N Dec. at 99)).

Congress has capped the number of U visas that may be granted in any given year at 10,000. INA § 214(p)(2)(A), 8 U.S.C. § 1184(p)(2)(A) (2024). At the time we decided *Matter of Sanchez Sosa*, the demand for U visas was dramatically lower than it is today. At the end of fiscal year 2011, approximately 8 months prior to our decision in *Matter of Sanchez Sosa*, there were 10,250 pending U visa petitions, including Mr. Sanchez Sosa's. *See* USCIS, Number of Form I-918 Petitions for U Nonimmigrant Status, Fiscal Years 2009-2025 (Oct. 8, 2025), https://www.uscis.gov/tools /reports-and-studies/immigration-and-citizenship-data (from dropdowns choose "U Nonimmigrant Status," "Oct," and "2025;" then click "Search;" then select "Form I-918, Petition for U Nonimmigrant Status"). Based on historical denial rates and USCIS' practice of granting the maximum number of available visas every year, it would have been reasonable to expect that

visas for all or most approvable U visa petitions pending at the end of fiscal year 2011 could be issued in fiscal year 2012.  *See id.*

However, when the respondent filed her U visa petition in May 2018, there were well over 100,000 pending U visa petitions, meaning that she would likely need to wait over a decade to receive a visa even if eligible for one.  *See id.*; *see also Gonzalez v. Cuccinelli*, 985 F.3d 357, 363 (4th Cir. 2021) (observing that "far more than 10,000 aliens seek U-Visas" and that "[a]s a result, there is a significant gap between U-Visa petitions that meet the eligibility criteria and petitions that the agency may grant").  The number of pending U visa petitions has since risen to almost 250,000, meaning that eligible petitioners who apply today will likely need to wait over 2 decades for a visa to become available.  USCIS, *supra.*

With this background in mind, we conclude that the Immigration Judge erred in denying DHS' motion to recalendar based on the totality of the circumstances.  "[W]hether there are persuasive reasons for a case to proceed and be resolved on the merits is the primary consideration in determining whether administrative closure is appropriate under the totality of the circumstances."  *Matter of B-N-K-*, 29 I&N Dec. at 100; *see also* 8 C.F.R. § 1003.18(c)(3)(ii)(A).  DHS wants to recalendar the respondent's case to bring these removal proceedings to a conclusion on the merits.  We have repeatedly held that a party's interest in bringing removal proceedings to a close on the merits is a persuasive reason to move forward with the case.  *See Matter of Cahuec Tzalam*, 29 I&N Dec. at 305; *Matter of B-N-K-*, 29 I&N Dec. at 101; *Matter of W-Y-U-*, 27 I&N Dec. at 20.

The respondent's removal proceedings have been administratively closed for almost 13 years, and she has not obtained any form of lawful status in the United States during that time.  *See* 8 C.F.R. § 1003.18(c)(3)(ii)(C) (providing that the "length of time elapsed since the case was administratively closed" is a relevant factor).  As explained further below, the respondent's desire to continue delaying removal proceedings based on her speculative eligibility for a U visa sometime in the future is not a persuasive reason against recalendaring.  *See* 8 C.F.R. § 1003.18(c)(3)(ii)(B) (providing that the "basis for any opposition to recalendaring" is a relevant factor).

The only evidence the respondent submitted in opposition to DHS' motion was a receipt notice from USCIS showing that she filed a U visa petition.  She did not submit any other evidence to establish prima facie eligibility for a U visa.  *See* 8 C.F.R. § 1003.18(c)(ii)(F) (providing that "the likelihood the [alien] will succeed" on the pending collateral matter is a

relevant factor). Nor has she submitted evidence showing that USCIS made a bona fide determination regarding her prima facie eligibility for a U visa or placed her on a waiting list after determining her eligibility. *See* 8 C.F.R. § 214.14(d)(2) (2026) (providing that USCIS will place eligible U visa petitioners who cannot be granted a visa due to the numerical cap on a waiting list); 3 USCIS Policy Manual, pt. C, chs. 5–6 (explaining the agency's bona fide determination and waiting list processes for U visa petitioners). "The absence of evidence demonstrating prima facie eligibility for the collateral benefit sought strongly militates against a grant of administrative closure." *Matter of Cahuec Tzalam*, 29 I&N Dec. at 304; *cf. Matter of Sanchez-Sosa*, 25 I&N Dec. at 813–14 (explaining that respondents seeking a continuance based on a pending U visa should submit evidence before the Immigration Judge demonstrating prima facie eligibility, including copies of all filings with USCIS).

Moreover, even assuming the respondent's petition is prima facie approvable, there is no indication in the record that a visa would become available "within a reasonably short period of time" such that continued closure of these proceedings is warranted. *Matter of B-N-K-*, 29 I&N Dec. at 99. Although counsel states in the respondent's brief that she expects USCIS to adjudicate her petition in the next 1 or 2 years this speculation is not evidence and is not supported by any record evidence. *See Matter of Mariscal-Hernandez*, 28 I&N Dec. 666, 673 (BIA 2022) (explaining that statements of counsel are not evidence and are not entitled to evidentiary weight (citing *Matter of J.J. Rodriguez*, 27 I&N Dec. 762, 765–66 (BIA 2020)). As we have held in analogous contexts, administrative closure is not appropriate if based on a respondent's potential ability to obtain a visa "at some remote time in the future." *Matter of Cahuec Tzalam*, 29 I&N Dec. at 305; *see also Matter of Gomez-Beltran*, 26 I&N Dec. 765, 771–72 (BIA 2016) ("[A]dministrative closure would not have been warranted because of the remote availability of a visa and the speculative nature of the respondent's ability to adjust his status . . . ."); *cf. Matter of Quintero*, 18 I&N Dec. 348, 350 (BIA 1982) ("[T]he fact that the respondent has an approved visa petition does not entitle him to delay the completion of deportation proceedings pending availability of a visa number.").

We further note that the issue of visa availability is not the same as "delays in the USCIS approval process." *Malilia v. Holder*, 632 F.3d 598, 606 (9th Cir. 2011) (explaining that a respondent "should not have to bear the ultimate cost for USCIS's inefficiencies"). The respondent's present inability to obtain a visa is not the result of any action or inaction by USCIS. There is currently no visa available to her because Congress has only

authorized the issuance of 10,000 U visas per year while there are hundreds of thousands of other aliens who have applied for one.

When, as here, a U nonimmigrant visa is not immediately available to a respondent and the record does not establish that one is likely to be available in the reasonably near future, administrative closure over DHS' objection is inappropriate because it effectively "amount[s] to a decision not to apply the Nation's immigration laws at all." *Hernandez-Serrano v. Barr*, 981 F.3d 459, 463 (6th Cir. 2020). The Board and Immigration Judges have no authority to use administrative closure as a de facto extra-statutory form of relief that effectively grants amnesty to thousands of removable aliens because they may be eligible for a visa sometime in the future.[2] *See Galo-Garcia v. INS*, 86 F.3d 916, 918 (9th Cir. 1996) (explaining that the Board and Immigration Judges lack authority to grant relief not provided by the INA or regulations); *Matter of Medina*, 19 I&N Dec. 734, 746 (BIA 1988).

We emphasize that the Board's statement in *Matter of B-N-K-*, 29 I&N Dec. at 99, that administrative closure is only appropriate for "a reasonably short period of time" applies in the context of both the initial decision to administratively close a case and the decision to recalendar a case. *See also* 8 C.F.R. § 1003.18(c)(3) (providing that administrative closure and recalendaring are governed by the same standards). It also applies regardless of what collateral action a party is waiting for, whether it is the adjudication of a visa petition, application for an inadmissibility waiver, or any other immigration benefit; the availability of a visa number; or any myriad changes in personal circumstances that may impact a removal proceeding.

What constitutes a reasonably short period may vary based on the "totality of the circumstances" and the factors "relevant to the particular case." *Id.* However, consistent with our responsibility to "provide clear and uniform guidance . . . on the proper interpretation and administration of the [INA] and its implementing regulations," 8 C.F.R. § 1003.1(d)(1), we conclude that absent unique circumstances specific to an individual case, administrative closure in excess of 6 months is presumptively unreasonable.

---

[2]   In contrast, DHS does have the authority to defer enforcement action against removable aliens who are eligible to receive a U visa but for the cap. *See* 8 C.F.R. § 214.14(d)(2). The Supreme Court "has specifically recognized that federal statutes contemplate and protect the discretion of [DHS] when making determinations concerning deferred action." *Ariz. Dream Act Coal. v. Brewer*, 855 F.3d 957, 974 (9th Cir. 2017) (citing *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 484–86 (1999)). However, as noted above, the respondent has not presented any evidence showing that USCIS has determined that she would be eligible for a U visa.

A presumptive 6-month time limit comports with the requirement that administrative closure be "temporary," 8 C.F.R. § 1003.18(c), and prevents its abuse as a "facially unlawful" means to effect the "permanent closure" of removal proceedings. *Hernandez-Serrano*, 981 F.3d at 465; *see also Arcos Sanchez v. Att'y Gen. U.S.*, 997 F.3d 113, 123 (3d Cir. 2021) (acknowledging that administrative closure has been "misused" to "unduly delay or permanently close and not decide cases"). Here, the respondent's removal proceedings have been administratively closed for nearly 13 years, a period of time that cannot be characterized as "temporary" or "reasonably short" under any common-sense meaning of those terms.

This case illustrates the inherent tension between the vague regulatory standard for administrative closure and DHS' clear statutory authority to enforce the immigration laws through prosecution of removal proceedings to completion. "Congress has plenary power to regulate immigration and the conditions on which aliens remain in the United States." *Mendez-Garcia v. Lynch*, 840 F.3d 655, 669 (9th Cir. 2016) (citation omitted). In exercising that power, Congress has vested DHS with the authority over "enforcement of . . . all . . . laws relating to the immigration and naturalization of aliens," INA § 103(a)(1), 8 U.S.C. § 1103(a)(1) (2024), and to "establish[] national immigration enforcement policies and priorities," 6 U.S.C. § 202(5) (2024).

Part and parcel of that statutory authority is DHS' "exclusive authority to control the prosecution of [removable] aliens." *Matter of J-A-B- & I-J-V-A-*, 27 I&N Dec. 168, 171 (BIA 2017) (alteration in original) (citation omitted). If DHS chooses "to initiate proceedings against an alien and to prosecute those proceedings to a conclusion, [Immigration Judges] and the Board must order [removal] if the evidence supports a finding of [removability] on the ground charged." *Matter of Yazdani*, 17 I&N Dec. 626, 630 (BIA 1981); *see also Cortez-Felipe v. INS*, 245 F.3d 1054, 1057 (9th Cir. 2001) (holding that Immigration Judges and the Board lack authority to review discretionary decisions regarding when and whether to initiate removal proceedings).

Administrative closure over DHS' objection is not appropriate when used simply to enable a removable respondent "to avoid an order regarding his [removability], and the consequences an order of [removal] could bring." *Matter of Amico*, 19 I&N Dec. 652, 654 (BIA 1988). Applying the administrative closure regulations in such a manner unduly interferes with DHS' broad statutory authority to "prioritize the removal of some and to deprioritize the removal of" other aliens. *Casa De Md. v. U.S. DHS*, 924 F.3d 684, 691 (4th Cir. 2019). It could also raise serious constitutional issues implicating the separation of powers if the result is to effectively create a form of immigration relief not clearly provided by Congress. *See*

*Biden v. Nebraska*, 600 U.S. 477, 504 (2023) ("'A decision of such magnitude and consequence' on a matter of 'earnest and profound debate across the country' must 'res[t] with Congress itself, or an agency acting pursuant to a clear delegation from that representative body.'" (alteration in original) (quoting *West Virginia v. EPA*, 597 U.S. 697, 735 (2022))).

A final relevant factor to consider is the "ultimate anticipated outcome if the case is recalendared." 8 C.F.R. § 1003.18(c)(3)(ii)(G). This factor is neutral based on the limited record before us. On remand to the Immigration Judge, the respondent may be able to establish her eligibility for some form of relief from removal that the Immigration Judge has jurisdiction to grant. Or she may be ordered removed from the United States.

## III. CONCLUSION

Considering the totality of the circumstances and for the reasons discussed above, the Immigration Judge erred in denying DHS' motion to recalendar these removal proceedings.[3] Accordingly, we will sustain DHS' appeal, recalendar these removal proceedings, and remand the record to the Immigration Judge for further proceedings. In remanding, we express no opinion on the ultimate outcome of these proceedings.

**ORDER:** The appeal is sustained, the Immigration Judge's September 16, 2025, decision is vacated, and these removal proceedings are recalendared.

---

[3] In light of recent Supreme Court precedent, serious questions have been raised about the constitutionality of administrative closure. Specifically, the use of administrative closure to effectively close immigration cases permanently may raise questions under the "major questions doctrine," which "address[es] a particular and recurring problem: agencies asserting highly consequential power beyond what Congress could reasonably be understood to have granted." *West Virginia v. EPA*, 597 U.S. at 724. The doctrine applies "when an agency claims the power to resolve a matter of great political significance or end an earnest and profound debate across the country." *Id.* at 743 (Gorsuch, J., concurring) (citation modified). Immigration is undoubtedly a matter of "great political significance" and subject to "earnest and profound debate" across the United States. And Congress has not granted the Board or Immigration Judges the authority to use administrative closure as a form of amnesty for removable aliens DHS has elected to prosecute for removal. *See Hernandez-Serrano*, 981 F.3d at 464 (recognizing that "administrative closure was simply a device 'created' by the IJs themselves" (quoting *Matter of Avetisyan*, 25 I&N Dec. 688, 690 (BIA 2012))). The parties are free to address any issues regarding the constitutionality of administrative closure on remand.

**FURTHER ORDER:** The record is remanded for further proceedings consistent with the foregoing opinion and for the entry of a new decision.