RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 20a0367p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────



ROBERTO ISAAC HERNANDEZ-SERRANO,

*Petitioner*,

*v.*

No. 20-3175

WILLIAM P. BARR, Attorney General,

*Respondent*.

───────────────

On Petition for Review from the Board of Immigration Appeals;
No. A 208 449 630.

Argued:  October 21, 2020

Decided and Filed:  November 24, 2020

Before:  GUY, CLAY, and KETHLEDGE, Circuit Judges.

───────────────

## COUNSEL

**ARGUED:**  Benjamin R. Winograd, IMMIGRANT & REFUGEE APPELLATE CENTER, LLC, Alexandria, Virginia, for Petitioner.  Edward Wiggers, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.  **ON BRIEF:**  Benjamin R. Winograd, IMMIGRANT & REFUGEE APPELLATE CENTER, LLC, Alexandria, Virginia, Rachel Bonano, LAW OFFICE OF RACHEL BONANO, PLLC, Knoxville, Tennessee, for Petitioner.  Remi da Rocha-Afodu, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

KETHLEDGE, J., delivered the opinion of the court in which GUY, J., joined.  CLAY, J. (pp. 12–23), delivered a separate dissenting opinion.

———————————

**OPINION**

———————————

KETHLEDGE, Circuit Judge.  A regulation delegating to immigration judges authority to take certain actions "[i]n deciding the individual cases before them" does not delegate to them general authority not to decide those cases at all.  Yet in more than 400,000 cases in which an alien was charged with being subject to deportation or (after April 1, 1997) removal, immigration judges or the Board of Immigration Appeals have invoked such a regulation to close cases administratively—meaning the case was removed from the IJ's docket without further proceedings absent some persuasive reason to reopen it.  As of October 2018, more than 350,000 of those cases had not been reopened.  An adjudicatory default on that scale strikes directly at the rule of law.

In May 2018 the Attorney General formally interpreted the regulations relevant here not to provide "general authority" for administrative closure in immigration cases.  Petitioner Roberto Hernandez-Serrano now challenges that interpretation, arguing that the immigration judge in his case should have had general authority to close it administratively.  We reject that argument and deny the petition.

I.

Hernandez-Serrano entered the United States without inspection in September 2015, when he was 16 years old.  He was promptly placed in removal proceedings before an immigration judge (IJ).  A year later, a juvenile court in Tennessee made findings that rendered Hernandez-Serrano potentially eligible for "Special Immigrant Juvenile" status.  *See* 8 U.S.C. § 1101(a)(27)(J).　Hernandez-Serrano submitted to the United States Citizenship and Immigration Services (CIS) an application for that status, which, if granted, would allow Hernandez-Serrano to petition for status as a lawful permanent resident.  *See* 8 U.S.C. § 1255(h).  In June 2017, Hernandez-Serrano moved for administrative closure of his removal case until CIS made a decision as to his application for Special Immigrant Juvenile status.  (Unexplained on this record is why he did not seek a simple continuance instead.)  The IJ denied that motion on the

apparent ground that, even if Hernandez-Serrano were granted that status, he would remain on a waiting list for consideration of a follow-on petition for status as a lawful permanent resident. In April 2018, the IJ denied other forms of relief and ordered Hernandez-Serrano removed to El Salvador.

Hernandez-Serrano filed an appeal with the Board of Immigration Appeals. Three weeks later, CIS granted his application for Special Immigrant Juvenile status. On that ground, Hernandez-Serrano moved to remand his case to the IJ. In his merits brief to the Board, Hernandez-Serrano challenged only the IJ's denial of his motion for administrative closure, arguing that he was "very close to being able to adjust status." The Board dismissed Hernandez-Serrano's appeal and denied his motion to remand, holding that the IJ lacked authority to close Hernandez-Serrano's case administratively under the relevant regulations as interpreted in the Attorney General's decision in *Matter of Castro-Tum*, 27 I. & N. Dec. 271 (A.G. 2018). This petition followed.

## II.

The Board applied *Castro-Tum* as binding precedent in dismissing Hernandez-Serrano's appeal. The question presented here is thus one of law, namely whether the Attorney General correctly interpreted 8 C.F.R. §§ 1003.10 and 1003.1(d) when holding, in *Castro-Tum*, that "immigration judges and the Board do not have the general authority to suspend indefinitely immigration proceedings by administrative closure." *Id.* at 271. We review that question de novo. *See Ruiz-Del-Cid v. Holder*, 765 F.3d 635, 639 (6th Cir. 2014). In doing so, we construe the regulations as we would any text, and consider deferring to the agency's interpretation only if a regulation remains genuinely ambiguous after exhausting "all the traditional tools of construction." *Kisor v. Wilkie*, 139 S.Ct. 2400, 2415 (2019) (internal quotation marks omitted). (That this case concerns review of the Executive's interpretation of a regulation, as opposed to review of an agency's rulemaking procedures, means that the Attorney General's reliance in his briefing here upon the Supreme Court's decision in *Vermont Yankee* is completely inapposite. *See* 435 U.S. 519, 529 (1978).)

A.

Immigration judges "exercise the powers and duties delegated to them by the [Immigration and Nationality] Act and by the Attorney General through regulation." 8 C.F.R. § 1003.10(b). Members of the Board likewise "act as the Attorney General's delegates in the cases that come before them." *Id*. § 1003.1(a)(1). Here, everyone agrees that the Act itself does not grant IJs or the Board any authority to close cases administratively. Nor, everyone agrees, do the relevant regulations grant IJs or the Board any such general authority expressly. Hence the question is whether the relevant regulations do so impliedly.

The relevant delegation of authority to IJs is set forth in 8 C.F.R. § 1003.10(b), which provides in relevant part: "In deciding the individual cases before them, and subject to the applicable governing standards, immigration judges shall exercise their independent judgment and discretion and may take any action consistent with their authorities under the Act and regulations that is appropriate and necessary for the disposition of such cases." This same provision also provides that, "*[i]n all cases*, immigration judges shall seek to resolve the questions before them in a timely and impartial manner consistent with the Act and regulations." *Id*. (emphasis added). Section 1003.10(b) thus describes actions IJs may take "[i]n *deciding* the individual cases before them"; and relatedly those actions must be "appropriate and necessary for the *disposition* of such cases." *Id*. (emphasis added). The relevant delegation of authority to the Board is nearly identical. *See* 8 C.F.R. § 1003.1(d)(1)(ii).

1.

Administrative closure is a device "created for the convenience of the Immigration Courts and the Board." *Matter of Avetisyan*, 25 I. & N. Dec. 688, 690 (BIA 2012); *see also Romero v. Barr*, 937 F.3d 282, 286-87 (4th Cir. 2019) ("administrative closure is a procedural mechanism primarily employed for the convenience" of IJs and the Board). The effect of administrative closure is to "remove a case from an Immigration Judge's active calendar or from the Board's docket." *Avetisyan*, 25 I. & N. Dec. at 692. Under the Board's precedent when the Attorney General decided *Castro-Tum*, the principal factor in determining whether to grant administrative closure was "whether the party *opposing* administrative closure has provided a

persuasive reason for the case to proceed and be resolved on the merits." *Matter of W-Y-U-*, 27 I. & N. Dec. 17, 20 (BIA 2017) (emphasis added). That party was typically the Department of Homeland Security (DHS)—the executive agency that prosecutes immigration cases—since, "as a general matter, every delay works to the advantage of the deportable alien who wishes merely to remain in the United States." *I.N.S. v. Doherty*, 502 U.S. 314, 323 (1992). And after a case was administratively closed, a party seeking to place it back on the IJ's active calendar likewise bore the burden of showing a "persuasive reason" to do so. *W-Y-U-*, 27 I. & N. Dec. at 20.

Unsurprisingly, then, "[a]lthough described as a temporary suspension" of removal proceedings, "administrative closure is effectively permanent in most instances." *Castro-Tum*, 27 I. & N. Dec. at 272. According to the Executive Office of Immigration Review, from fiscal year 1980 to fiscal year 2011, "283,366 cases were administratively closed." *Id.* at 273. The practice's usage accelerated during fiscal years 2012-2017, when another 215,285 cases were administratively closed. *Id.* By the end of fiscal year 2017, "some 355,835 administratively closed cases had yet to be recalendared." *Id.* at 293; *see also Romero*, 937 F.3d at 289 ("as of October 2018, over 330,000 cases remained administratively closed").

2.

The result of administrative closure, as described above, is that immigration cases leave an IJ's active calendar and, more often than not, never come back. Thus the reality is that, in hundreds of thousands of cases, administrative closure has amounted to a decision not to apply the Nation's immigration laws at all. Section 1003.10 hardly provides general authority for such a practice. Administrative closure typically is not an action taken "[i]n deciding" a case before an IJ; instead, as shown above, it is typically a decision not to decide the case. Nor is administrative closure typically an action "necessary for the disposition" of an immigration case. Administrative closure is not itself a "disposition" of a case, as Hernandez-Serrano concedes in this appeal. *See also Avetisyan*, 25 I. & N. Dec. at 695 (acknowledging "the undisputed fact that administrative closure does not result in a final order"). To the contrary, as the Attorney General has correctly observed, "[a]dministrative closure in fact is the antithesis of a final disposition"—because the practice by design prevents the IJ from making any disposition in the case. *Castro-*

*Tum*, 27 I. & N. Dec. at 285.  That § 1003.10(b) in its next breath admonishes IJs, "*in all cases,*" to "resolve the questions before them in a timely" manner only underscores the absence of any general authority in that same regulation to set aside those cases indefinitely.   True, as Hernandez-Serrano points out, the "timely manner" language is hortatory, and the admonition speaks to the resolution of "questions" rather than the case itself; but the IJ can resolve neither questions nor a case once it is administratively closed.

The same analysis holds for the relevant regulation delegating authority to the Board, 8 C.F.R. § 1003.1(d)(1)(ii), which Hernandez-Serrano agrees is "nearly identical" to the IJ regulation.  Pet'r Br. at 18.  Section 1003.1(d)(1)(ii) likewise provides that the Board "may take any action consistent with their authorities under the Act and the regulations as is appropriate and necessary for the disposition of the case."  8 C.F.R. § 1003.1(d)(1)(ii).  And that regulation likewise states that "[t]he Board shall resolve the questions before it in a manner that is timely, impartial, and consistent with the Act and regulations."   *Id.* § 1003.1(d)(1).   Hence that regulation too does not delegate a general authority for administrative closure.

The practice's origins provide no reason to conclude otherwise.  As early as 1958, regulations granted the predecessors to IJs (called special inquiry officers) and the Board authority to take actions "appropriate and necessary for the disposition of" their cases.  23 Fed. Reg. 2670, 2671 (Apr. 23, 1958); 23 Fed. Reg. 9115, 9117 (Nov. 26, 1958).  Yet there is little if any record of immigration cases being administratively closed for nearly a quarter-century afterward.  The practice first surfaced semi-officially in 1984, when the Chief Immigration Judge circulated a memorandum in which he stated that, in cases where an alien failed to appear for his deportation hearing, "the Immigration Judge may"—as an alternative to ordering the alien removed *in absentia*—"order that the case be administratively closed with no further action to be taken[.]"  Memorandum to All Immigration Judges from William R. Robie, Chief Immigration Judge, EOIR, *Operating Policy and Procedure 84-2: Cases in Which Respondents/Applicants Fail to Appear for Hearing* 1 (Mar. 7, 1984).  But the memorandum identified no basis for that authority.  Thus, by all appearances, administrative closure was simply a device "created" by the IJs themselves, *Avetisyan*, 28 I. & N. Dec. at 691, rather than an exercise of authority delegated by the Attorney General.

3.

We respectfully disagree, therefore, with the Fourth Circuit's conclusion in *Romero* that these same regulations delegate broad authority to close cases administratively. True, the phrase "any action" is "expansive" when standing alone; and the phrase "appropriate and necessary" can likewise have a broad meaning, depending on context. 937 F.3d at 292-93. But the court's conclusion—that "'any action . . . for the disposition of' the case is read most naturally to encompass actions of whatever kind *appropriate* for the resolution of a case[,]" *id*. at 292 (ellipsis in original; emphasis added)—reads out of the regulations the requirement of necessity. And it is simply not true that "the only limitation in the text of §§ 1003.1(b) and 1003.1(d)(1)(ii) on the term 'any action' is that the circumstances be 'appropriate and necessary' for IJs and the BIA to administratively close a case." *Id*. at 293. To the contrary, the regulations expressly limit their delegation to actions "necessary *for the disposition*" of the case. And that more restricted delegation cannot support a decision *not* to decide the case for reasons of administrative "convenience" or the "efficient management of the resources of the immigration courts and the BIA." *Id*. at 289 (brackets and internal quotation marks omitted).

Nor is the standard met when an IJ sees a reason "to temporarily pause removal proceedings[.]" *W-Y-U-*, 27 I. & N. Dec. at 18. That is what continuances are for; and the Attorney General has expressly delegated to IJs authority to "grant a motion for continuance for good cause shown." 8 C.F.R. § 1003.29. (Here, nobody has even attempted to explain why a simple continuance would not have provided Hernandez-Serrano the time necessary to petition for status as a lawful permanent resident before entry of an order of removal.)

Nor should be it enough—as in *Avetisyan*, the example of putative necessity cited over and over in the briefing and caselaw—that DHS might need to shuttle an alien's "file" between its own internal divisions (namely, Citizenship and Immigration Services, which processes applications for adjustment of status, and Immigration and Customs Enforcement, "which prosecutes removal proceedings") while a removal proceeding for the alien remains pending before an IJ. *See Romero*, 937 F.3d at 293. That is more a tale of bureaucratic mishap than an example of legal necessity for administrative closure.

Hernandez-Serrano himself "does not dispute that administrative closure is neither appropriate nor necessary in the vast majority of cases." Pet'r Br. at 23. And he agrees that the Attorney General could have construed the regulations at issue here to mean "that administrative closure is not appropriate when DHS merely wishes to exercise prosecutorial discretion (as occurred under the Obama administration) or that proceedings should not be administratively closed if the expected duration of the closure would exceed a certain period of time." Pet'r Reply at 9. Those concessions imply that the permanent closure of some 350,000 immigration cases was largely contrary to law. Indeed no one—neither Hernandez-Serrano, nor the two circuit courts that have rejected the Attorney General's decision in *Castro-Tum*—has explained how a general authority to close cases administratively can itself be lawful while leading to such facially unlawful results.

Hernandez-Serrano does present several additional arguments in favor of recognizing a general authority to close cases administratively under these same regulations. The first concerns a handful of regulations—all of them promulgated after 1998—that do mention administrative closure expressly. Three of those regulations provide that, when an alien appears eligible for certain kinds of adjustment of status, the IJ or Board "shall administratively close" the proceeding. *See* 8 C.F.R. § 1214.3 ("If the alien appears eligible for V nonimmigrant status, the immigration judge or the Board, whichever has jurisdiction, shall administratively close the proceeding"); 8 C.F.R. § 1245.13(d)(3)(i) (if the alien "appears to be eligible to file an application for adjustment of status under section 202 of Pub.L. 105-100," the IJ or Board "shall, upon request of the alien and with the concurrence of the Service, administratively close the proceedings"); 8 C.F.R. § 1245.15(p)(4) ("If the alien appears to be eligible to file an application for adjustment of status under [the Haitian Refugee Immigrant Fairness Act of 1998], the Immigration Court or the Board (whichever has jurisdiction) shall, with the concurrence of the Service, administratively close the proceedings"). A fourth regulation provides that, "[i]f the alien appears eligible for T nonimmigrant status" as a "victim of a severe form of trafficking in persons[,]" the IJ or Board "may grant [] a request to administratively close the proceeding[.]" 8 C.F.R. § 1214.2(a). All these regulations, Hernandez-Serrano contends, "presuppose" the existence of a general authority to close cases administratively under §§ 1003.10 and 1003.1(d). Pet'r Br. at 29. We disagree: each of those regulations stands on its own bottom as a specific

authorization for administrative closure under specific circumstances. To the extent these regulations presuppose anything, they presuppose only the existence of a general practice of administrative closure, not its legality. And neither the IJs nor the Board enjoy a right of adverse possession as to the Attorney General's regulations.

The Attorney General, for his part, asserted in *Castro-Tum* that these same regulations would be "largely superfluous" if the IJs or Board already had general authority to close cases administratively under §§ 1003.10 and 1003.1(d). 27 I. & N. Dec. at 286. We reject that argument as well: these regulations are plainly more prescriptive than any general authorization for administrative closure, and indeed mandate it under specified circumstances. Hence they are not superfluous. These regulations therefore cut neither way as to whether the IJs or Board have authority to close cases administratively under §§ 1003.10 and 1003.1(d).

Hernandez-Serrano next infers the existence of a general authority to close cases administratively from the Attorney General's allowance of administrative closure in cases where "a previous judicially approved settlement expressly authorizes such an action." *Castro-Tum*, 27 I. & N. Dec. at 272. Otherwise, Hernandez-Serrano contends, the Attorney General "could not have entered judicially approved settlements requiring IJs and the Board to administratively close certain cases[.]" Pet'r Br. at 34; *see also Romero*, 937 F.3d at 294 n.13 (same). But the authority for administrative closure in those cases was the exercise of the Article III judicial power (in the form of an order incorporating the settlement's terms), not a delegation from the Attorney General. And though an executive agency is bound by its own regulations, *see Gor v. Holder*, 607 F.3d 180, 191 (6th Cir. 2010), an Article III court—when ordering a remedy for rights violated by an agency—is limited instead by "the equitable principles governing judicial action." *Ford Motor Co. v. N.L.R.B.*, 305 U.S. 364, 373 (1939).

Those principles do not permit a court to intrude upon "an essentially administrative function[,]" such as the exercise of "judgment" peculiarly within the agency's technical expertise. *Federal Power Commission v. Idaho Power Co.*, 344 U.S. 17, 21 (1952). But regulations concerning adjudicatory procedure typically are not based solely (if at all) on the agency's technical expertise. Thus, in appropriate circumstances, a court may craft an equitable remedy requiring an agency to act contrary to those regulations—even though the agency itself is

otherwise bound by them.  For example, one of the settlement orders cited by Hernandez-Serrano required not only administrative closure under some circumstances, but also that class members be permitted to file motions to reopen their cases with an IJ or the Executive Office of Immigration Review, "*not subject to the time or numerical limitations* [upon those motions] in 8 C.F.R. § 3.2 or 8 C.F.R. § 3.23[.]"  *Barahona-Gomez v. Ashcroft*, 243 F.Supp.2d 1029, 1034-36 (N.D. Cal. 2002) (emphasis added).  That settlement order thus *expressly* required the agency not to follow its own regulations.  Hence a federal court—when exercising its equitable powers—can sometimes order actions that an agency otherwise could not take.  That federal courts have ordered administrative closure in some cases, therefore, says nothing about whether the Attorney General has delegated to IJs or the Board a general authority to do the same.

In summary, therefore, we agree with the Attorney General that §§ 1003.10 and 1003.1(d) do not delegate to IJs or the Board "the general authority to suspend indefinitely immigration proceedings by administrative closure."  *Castro-Tum*, 27 I. & N. Dec. at 272.

4.

Hernandez-Serrano does attempt to make a more limited argument here.    He contends that "it strains credulity to suggest that it is *never* appropriate and necessary to administratively close proceedings."  Pet'r Br. at 24.  And he suggests that the standard can be met in instances of genuine legal necessity.  Specifically, during oral argument and in letters submitted afterward to the court under Appellate Rule 28(j), Hernandez-Serrano argues that, in some instances, the mere fact that removal proceedings remain pending before an IJ or the Board would legally bar an alien from obtaining a favorable adjustment of status to which he would be potentially entitled in proceedings before another agency.  As a potential example, Hernandez-Serrano cites 8 C.F.R. § 212.7, under which CIS may grant a "provisional unlawful presence waiver," which is itself a prerequisite to adjustment of status on certain grounds.  Under that regulation, an alien who is otherwise eligible for such a waiver cannot obtain one if she "is in removal proceedings, in which no final order has been entered, unless the removal proceedings are administratively closed and have not been recalendared at the time of filing of the application for a provisional unlawful presence waiver."  8 C.F.R. § 212.7(e)(4)(iii).  Thus, Hernandez-Serrano says, an IJ or the Board could lawfully conclude that administrative closure is "necessary for the disposition"

of an alien's case if she is eligible for adjustment of status but barred from obtaining it by § 212.7(e)(4)(iii). But Hernandez-Serrano does not contend that § 212.7(e)(4)(iii) applies in his case.[1] More to the point, he did not argue before the IJ or the Board that administrative closure was "necessary for the disposition" of his case within the meaning of §§ 1003.10(b) and 1003.1(d)(1)(ii) on the ground that the pendency of his removal proceedings itself legally barred him from obtaining an adjustment of status for which he appeared eligible under a statute or regulation. We therefore lack authority to consider that argument here. *See Gilaj v. Gonzales*, 408 F.3d 275, 289 (6th Cir. 2005) ("Only those claims that have been properly presented to the BIA and considered on their merits can be reviewed by the court in an immigration appeal").

\*     \*     \*

The petition is denied.

---

[1]Hernandez-Serrano does assert in a Rule 28(j) letter that, under 8 C.F.R. § 1245.2(a)(1)(i), "[i]f this Court denies the petition for review, Petitioner could not apply for lawful permanent resident status unless the Board of Immigration Appeals (BIA) agreed to reopen his proceedings." But we doubt that § 1245.2(a)(1)(i) could be construed that way. Section 1245.2(a)(1)(i) provides in full:

> In the case of any alien who has been placed in deportation proceedings or in removal proceedings (other than as an arriving alien), the immigration judge hearing the proceeding has exclusive jurisdiction to adjudicate any application for adjustment of status the alien may file.

This regulation is couched in various forms of the present tense throughout. Specifically, the verb "has been placed" is used in the present perfect tense, which denotes an action that began at some indefinite time in the past but "is still continuing." MARGARET SHERTZER, THE ELEMENTS OF GRAMMAR 28-29 (1986). Once the "proceedings" have ended, therefore, the immigration judge's "exclusive jurisdiction to adjudicate any application for adjustment of status" likely ends as well. In addition, the Attorney General states that, "[g]iven the equities in this case, DHS may be willing to join" a motion to reopen Hernandez-Serrano's case under 8 C.F.R. § 1003.2(c)(3)(iii). No. 20-3175, Rule 28(j) Letter (Oct. 22, 2020).

---

**DISSENT**

---

CLAY, Circuit Judge, dissenting.   The regulations governing immigration cases—8 C.F.R. § 1003.10(b) and 8 C.F.R. § 1003.1(d)(1)(ii)—authorize Immigration Judges ("IJ") and the Board of Immigration Appeals ("BIA") to "exercise their independent judgment and discretion" and to "take any action consistent with their authorities under the [Immigration and Nationality] Act and regulations that is appropriate and necessary for the disposition" of a case. As the Fourth and Seventh Circuits have held, *Matter of Castro-Tum*, 27 I. & N. Dec. 271 (A.G. 2018), wrongly concluded that §§ 1003.10(b) and § 1003.1(d)(1)(ii) do not provide IJs and the BIA with a general authority to administratively close cases.  Because the BIA incorrectly held that it was foreclosed by *Castro-Tum* from considering whether administrative closure was appropriate and necessary for the disposition of Hernandez-Serrano's case, I dissent.

**BACKGROUND**

I.

Administrative closure is a "docket management tool that is used to temporarily pause removal proceedings" by "temporarily remov[ing] a case from an Immigration Judge's active calendar or from the Board's docket." *Matter of W-Y-U-*, 27 I. & N. Dec. 17, 17–18 (BIA 2017) (quoting *Matter of Avetisyan*, 25 I. & N. Dec. 688, 692 (BIA 2012)).  "Administrative closure gives respondents the opportunity to pursue more promising forms of relief, eliminates unnecessary costs associated with remaining in active removal proceedings, and allows judges to prioritize other cases while the respondent awaits the resolution of other pending matters that would make removal proceedings obsolete."  Elizabeth Montano, *The Rise and Fall of Administrative Closure in Immigration Courts*, 129 Yale L.J. FORUM 567, 568 (2020) (citation omitted).  "After a case has been administratively closed, either party may move to recalendar it before the Immigration Court . . . or to reinstate the appeal before the Board."  *W-Y-U-*, 27 I. & N. Dec. at 18 (citing *Avetisyan*, 25 I. & N. Dec. at 695 & n.5).

Although a number of federal regulations authorize or require administrative closure in specific circumstances, *see* 8 C.F.R. § 1214.2(a); 8 C.F.R. § 1214.3; 8 C.F.R. § 1245.13(d)(3)(i); 8 C.F.R. § 1245.15(p)(4)(i); 8 C.F.R. § 1245.21(c), a general authority to administratively close immigration cases "is not described in the immigration statutes or regulations," *Gonzalez-Caraveo v. Sessions*, 882 F.3d 885, 889 (9th Cir. 2018). In *Matter of Avetisyan*, however, the BIA relied on 8 C.F.R. § 1003.10(b) and 8 C.F.R. § 1003.1(d)(1)(ii) in support of its holding that IJs and the BIA have the authority to administratively close cases even when one of the parties is opposed. *See* 25 I. & N. Dec. at 691. In *Avetisyan*, the BIA also set forth six factors for IJs to consider when evaluating a request for administrative closure "including but not limited to: (1) the reason administrative closure is sought; (2) the basis for any opposition to administrative closure; (3) the likelihood the respondent will succeed on any petition, application, or other action he or she is pursuing outside of removal proceedings; (4) the anticipated duration of the closure; (5) the responsibility of either party, if any, in contributing to any current or anticipated delay; and (6) the ultimate outcome of removal proceedings (for example, termination of the proceedings or entry of a removal order) when the case is recalendared before the Immigration Judge or the appeal is reinstated before the Board." *Id.* at 696.

However, in *Castro-Tum*, then-Attorney General Jefferson B. Sessions authored a precedential decision holding that "immigration judges and the Board lack the general authority to administratively close cases" because "[n]either section 1003.10(b) nor section 1003.1(d)(1)(ii) confers the authority to grant administrative closure." 27 I. & N. Dec. at 285, 293.

## II.

Petitioner Roberto Hernandez-Serrano is a 22-year-old native and citizen of El Salvador. When he was two months old, Hernandez-Serrano's mother abandoned him and he was raised by his grandparents. In 2015, when Hernandez-Serrano was sixteen, he fled El Salvador and entered the United States after gang members in El Salvador attempted to recruit him. Because he was not admitted or paroled after inspection by an Immigration Officer, the Department of Homeland Security ("DHS") charged him with being an inadmissible alien under 8 U.S.C. § 1182(a)(6)(A)(i) and ordered him to appear before an IJ. Through counsel, Hernandez-Serrano

conceded removability and indicated that he intended to seek relief by applying for asylum, withholding of removal, Convention Against Torture protection, voluntary departure, and Special Immigrant Juvenile ("SIJ") status.

Congress provided for SIJ status "to assist a limited group of abused children to remain safely in the country with a means to apply for [lawful permanent resident] status." *Garcia v. Holder*, 659 F.3d 1261, 1271 (9th Cir. 2011). A SIJ designee is "deemed . . . paroled into the United States" for purposes of applying for an adjustment of status to that of permanent resident, despite not having been inspected and admitted or otherwise paroled into the United States. 8 U.S.C. § 1255(h)(1). Among other requirements, "[t]o qualify for SIJ [status], an alien must be declared to be a court dependant eligible for long-term foster care due to abuse, neglect, or abandonment, and a judge or administrative body must find that it is not in the juvenile's best interest to return to his country of nationality." *Garcia*, 659 F.3d at 1270–71 (citing 8 U.S.C. § 1101(a)(27)(J)); *see also* 8 C.F.R. § 204.11(c). The petitioner must then obtain the consent of the Secretary of Homeland Security by filing a Form I-360, Petition for Amerasian, Widow(er), or Special Immigrant. *See* 8 U.S.C. § 1101(a)(27)(J)(iii); *see also* 8 C.F.R. § 204.11. Congress has provided that "[a]ll applications for [SIJ] status . . . shall be adjudicated by the Secretary of Homeland Security not later than 180 days after the date on which the application is filed." 8 U.S.C. § 1232(d)(2).

Because immigrant visas are immediately available for almost all children who have been granted SIJ status, for most of these non-citizens who are in removal proceedings, the approval of the Form I-360 allows them to apply for a Green Card by filing a Form I-485, Application to Register Permanent Residence or Adjust Status. *See* 8 C.F.R. § 1245.2(a)(2)(i)(A). However, there is a statutory limitation on the total number of visas available for SIJ designated individuals, *see* 8 U.S.C. § 1153(b)(4), and there is a limitation on the percentage of such visas "available to natives of any single foreign state," 8 U.S.C. § 1152(a)(2). Accordingly, petitions from juveniles from a few countries with high numbers of children applying for SIJ-based adjustments of immigration status, El Salvador included, are "placed in a queue," based on the filing date of their Form I-360 (called the "priority date"), and these children can only apply for a Green Card once visas are available. *Abdelghani v. Holder*, 567 F. App'x 388, 390 (6th Cir.

2014).  A SIJ designee becomes a legal permanent resident of the United States once the Form I-485 is approved. *See* 8 C.F.R. § 1245.2(a)(5)(ii).

On October 6, 2016, a magistrate judge in the juvenile court for Knox County, Tennessee, issued an order finding that it was in Hernandez-Serrano's "best interest to remain in the United States . . . as result of his mother's abandonment and inability to provide appropriate care and supervision for [him]; lack of any other suitable caretakers for [him] in El Salvador, and because of the risk of harm to [him] by El Salvadoran gangs." (Final Order, A.R. #359.)  Five days later, on October 11, 2016, Hernandez-Serrano's Form I-360 was filed with the United States Citizenship and Immigration Services ("USCIS").  On June 6, 2017, as his Form I-360 was still pending, Hernandez-Serrano filed a motion with the IJ to administratively close the removal proceedings against him until USCIS rendered a decision on his Form I-360.  DHS opposed the motion.  The IJ denied the motion stating that it was "pending" and "premature." (Hr'g Tr., A.R. #183.)

Hernandez-Serrano then filed an application for asylum, withholding of removal, and protection under the Convention Against Torture.  In his application, Hernandez-Serrano explained that he was afraid of returning to El Salvador because "[t]hey (the gangs) would kill me or kidnap me if I return." (I-589, Application for Asylum and for Withholding Removal, A.R. #253.)  Hernandez-Serrano testified in support of his application at a hearing on April 17, 2018 but, at the conclusion of the hearing, the IJ issued an oral decision denying him relief and ordering his removal to El Salvador.

On May 14, 2018, Hernandez-Serrano appealed the IJ's decision to the BIA.  On May 30, 2018, 596 days after it was received, USCIS finally approved Hernandez-Serrano's Form I-360. Based on having obtained SIJ status, on August 2, 2018, Hernandez-Serrano filed a motion to remand the case back to the IJ.  DHS opposed the motion because, at the time, Hernandez-Serrano was still unable to file a Form I-485 based on his priority date and DHS argued that "it would be inappropriate to remand at this time because the respondent has no relief currently

available to him in Immigration Court and it is speculative to assume that relief will be available to him in the near future."[1]  (Response to Respondent's Mot. to Remand, A.R. ##36–37.)

More than a year after Hernandez-Serrano filed his motion to remand, on August 15, 2019, the BIA issued a briefing schedule.  In his brief, Hernandez-Serrano argued that the IJ erred in denying his motion to administratively close the case because, due to USCIS's untimely adjudication, he was still waiting for approval of his Form I-360 at the time of his hearing. Hernandez-Serrano acknowledged that in *Castro-Tum*, which was decided after he filed his appeal, the Attorney General held that IJs and the BIA lacked a general authority to administratively close cases, but he argued that the Fourth Circuit had vacated that decision.  On January 17, 2020, the BIA dismissed Hernandez-Serrano's appeal and denied his motion to remand.  The BIA explained that "[t]he Attorney General . . . held that 'immigration judges and the Board may only administratively close a case where a previous regulation or a previous judicially approved settlement expressly authorizes such an action'" and that the Fourth Circuit's "decision only has precedential authority in cases arising in the jurisdiction of the United States Court of Appeals for the Fourth Circuit."[2]  (Decision of the Board of Immigration Appeals, A.R. ##4 & n.1 (citing *Castro-Tum*, 27 I. & N. Dec. 271).)  This timely appeal followed.

## DISCUSSION

Both the Fourth and Seventh Circuits have held that *Castro-Tum* was wrongly decided and, accordingly, the decision no longer governs immigration proceedings in either of those circuits.  *See Romero v. Barr*, 937 F.3d 282 (4th Cir. 2019); *Meza Morales v. Barr*, 973 F.3d 656 (7th Cir. 2020).  The question before this Court is whether to similarly hold that *Castro-Tum* wrongly concluded that 8 C.F.R. §§ 1003.10(b) and 1003.1(d)(1)(ii) do not provide IJs and the BIA with a general authority to administratively close cases.

---

[1]As of June 2020, Hernandez-Serrano is now eligible to receive a special immigration visa. *See* U.S. DEPARTMENT OF STATE, *Visa Bulletin for June 2020*, available at https://travel.state.gov/content/travel/en/legal/visa-law0/visa-bulletin/2020/visa-bulletin-for-june-2020.html (last visited November 23, 2020).

[2]Because Hernandez-Serrano has not challenged the BIA's retroactive application of *Castro-Tum*, *see Faudoa-Gonzalez v. Barr*, — F. App'x —, 2020 WL 6684433, at *4 (5th Cir. Nov. 12, 2020) ("[W]e conclude the BIA abused its discretion by retroactively applying *Castro-Tum* . . ."), he has waived this issue, *see Turner v. City of Taylor*, 412 F.3d 629, 639 (6th Cir. 2005).

Section 1003.10(b) provides that "[i]n deciding the individual cases before them, and subject to the applicable governing standards, immigration judges shall exercise their independent judgment and discretion and may take any action consistent with their authorities under the Act and regulations that is appropriate and necessary for the disposition of such cases." Section 1003.1(d)(1)(ii) provides that "Board members shall exercise their independent judgment and discretion in considering and determining the cases coming before the Board, and a panel or Board member to whom a case is assigned may take any action consistent with their authorities under the Act and the regulations as is appropriate and necessary for the disposition of the case."

"Read naturally, the word 'any' has an expansive meaning, that is, 'one or some indiscriminately of whatever kind.'" *United States v. Gonzales*, 520 U.S. 1, 5 (1997) (quoting Webster's Third New International Dictionary 97 (1976)). Moreover, *Castro-Tum* acknowledges that an administrative closure is an "action." 27 I. & N. Dec. at 271–72; *see also Morales*, 973 F.3d at 665; *Romero*, 937 F.3d at 293. Finally, "[o]ne does not need to open up a dictionary in order to realize the capaciousness of [the] phrase . . . 'appropriate and necessary.'" *Michigan v. E.P.A.*, 576 U.S. 743, 752 (2015). Therefore, as long as it fits into the broad limitation of being appropriate and necessary for the disposition of the case, the plain language of these two regulations provides IJs and the BIA with the authority to administratively close cases.[3] Accordingly, the BIA's reliance on *Castro-Tum*'s blanket ban on administrative closure to deny Hernandez-Serrano's appeal was erroneous.

*       *       *

Much of the majority opinion is spent disparaging a purported overuse of administrative closure by the immigration courts. But whether immigration courts have granted administrative closure too frequently, and have failed to reopen administratively closed cases too often, is of no significance to the question of whether *Castro-Tum* wrongly held that IJs and the BIA never

---

[3]Because these regulations unambiguously provide IJs and the BIA with the discretionary authority to administratively close cases when it is appropriate and necessary for the disposition of the case, this Court "has no business deferring to any other reading, no matter how much the [Attorney General] insists it would make more sense." *Kisor v. Wilkie*, 139 S. Ct. 2400, 2415 (2019).

have the discretion to decide that administrative closure is "appropriate and necessary for the disposition" of immigration cases.

The simple fact is that examples abound of situations where §§ 1003.10(b) and 1003.1(d)(1)(ii) provide IJs and the BIA with the discretion to decide that administrative closure is appropriate and necessary for the disposition of a case. For example, "DHS developed Form I-601A (Application for Provisional Unlawful Presence Waiver) to permit certain immigrant visa applicants—spouses, children, or parents of U.S. citizens or [lawful permanent residents]—who require a waiver of inadmissibility for unlawful presence to apply for such a waiver in the U.S. before they depart for an immigrant visa interview at a U.S. embassy or consulate abroad, thereby expediting the visa process." *Romero*, 937 F.3d at 287 n.2. However, non-citizens in removal proceedings are only eligible to apply for a provisional unlawful presence waiver if their case has been administratively closed. *See* 8 C.F.R. § 212.7(e)(4)(iii). Therefore, an IJ or the BIA could potentially decide that administrative closure is appropriate and necessary for the disposition of a non-citizen's case if they appear eligible for an immigrant visa but unable to obtain a provisional unlawful presence waiver under § 212.7(e)(4)(iii).

Hernandez-Serrano's case itself presents another prime example. At the time that the IJ denied his request for administrative closure, Hernandez-Serrano had satisfied all the requirements necessary to qualify for SIJ status and to be eligible for an adjustment of status except for obtaining the consent of the Secretary of Homeland Security. *See* 8 U.S.C. § 1101(a)(27)(J)(iii). And by the time the BIA ruled on his appeal, Hernandez-Serrano had obtained that untimely consent and was only waiting for his priority date to become current. Considering that Congress provided for SIJ status to allow eligible abused non-citizen children "to remain safely in the country with a means to apply for [lawful permanent resident] status," *Garcia*, 659 F.3d at 1271, it is unclear how the IJ or the BIA could have been foreclosed from exercising their "independent judgment and discretion" to determine that it was "appropriate and necessary for the disposition" of an adjustment of status to administratively close Hernandez-Serrano's case until his Form I-360 was adjudicated and his priority date became current.

This is especially so because nothing in the text of §§ 1003.10(b) and 1003.1(d)(1)(ii) forecloses the IJ or the BIA from exercising their "independent judgment and discretion" and

deciding that it would be "appropriate and necessary for the disposition" to administratively close a case even if the disposition for which administrative closure is appropriate and necessary is at some later date. *See* Disposition, Black's Law Dictionary (11th ed. 2019) ("A final settlement or determination."). Although the regulations provide that "immigration judges shall seek to resolve the questions before them in a timely and impartial manner consistent with the Act and regulations," 8 C.F.R. § 1003.10(b), and that "[t]he Board shall resolve the questions before it in a manner that is timely, impartial, and consistent with the Act and regulations," 8 C.F.R. § 1003.1(d)(1), in Hernandez-Serrano's case, the *question* before the IJ and the BIA was whether to administratively close the case. Accordingly, a discretionary decision to administratively close Hernandez-Serrano's case would have timely resolved that question in a manner consistent with Congress's intention to provide relief to non-citizen children who obtained SIJ status. In any event, as "timely" "is not a hard and fast deadline," and "not all mechanisms that lengthen the proceedings of a case prevent 'timely' resolution," it would not have violated any general policy to resolve cases in a "timely" fashion to administratively close Hernandez-Serrano's case. *Morales*, 973 F.3d at 665. Therefore, §§ 1003.10(b) and 1003.1(d)(1)(ii) provided the IJ and the BIA with the discretion to decide that administrative closure was "appropriate and necessary for the disposition" of an adjustment of status once Hernandez-Serrano's Form I-360 was approved and his priority date became current.[4]

*Avetisyan* provides another example of a situation where an IJ could properly exercise her discretion and decide that administrative closure is "appropriate and necessary for the disposition." In *Avetisyan*, an Armenian citizen was charged with overstaying her visa. *See* 25 I. & N. Dec. at 689. At her removal hearings, Avetisyan admitted the factual allegations but "advised the Immigration Judge that she had recently married, that she and her husband had a United States citizen child, and that her husband was in the process of becoming a naturalized United States citizen and would be filing a visa petition on her behalf." *Id.* The IJ granted a

---

[4]The majority states that "nobody has even attempted to explain why a simple continuance would not have easily provided Hernandez-Serrano the time necessary to petition for status as a lawful permanent resident before entry of an order of removal." Maj. Op. at 7. However, an IJ or the BIA could exercise the discretion to decide that administrative closure is appropriate and necessary for the disposition in situations where a non-citizen is seeking an adjustment of status because, for example, the Attorney General has held that a distant priority date does not provide grounds for a continuance. *See Matter of L-A-B-R-*, 27 I. & N. Dec. 405, 418 (2018).

continuance to allow for proof of the husband's naturalization and the filing of the visa petition. *See id.* After several more continuances, Avetisyan indicated that the only remaining step was the adjudication of her visa petition. *See id.* The IJ granted five more continuances to allow for the adjudication of the pending visa petition. *See id.* However, eventually, the IJ realized that intradepartmental bureaucracy threatened to create a permanent impasse: Avetisyan's file was being transferred to the IJ for each hearing which was not providing the visa petition unit enough time to adjudicate her visa petition. *See id.* at 689–690; *see also Romero*, 937 F.3d at 293–94. In response, the IJ administratively closed the case to allow for Avetisyan's visa petition to be adjudicated, and the BIA affirmed. *See id.* at 690.

Even though Avetisyan was "the beneficiary of a *prima facie* approvable visa petition" which would have allowed her to "successfully apply for adjustment of status once the visa petition [was] approved," absent administrative closure, the disposition of an adjustment of status could not be reached in her case. *Id.* at 697. The majority discounts *Avetisyan* as "more a tale of bureaucratic mishap than an example of legal necessity for administrative closure." Maj. Op. at 7. However, it is unclear what basis the majority has for holding that the IJ could not exercise her "independent judgment and discretion" and decide that administrative closure was "appropriate and necessary for the disposition" of an adjustment of status in Avetisyan's case. Moreover, there is no indication from the briefing whether *Avetisyan* was a one-off situation, or a recurring event for which IJs frequently use administrative closure to effectively resolve. Relegating immigrants with *prima facie* approvable visa petitions to the "bureaucratic mishap" suffered by Avetisyan is an outcome to be avoided.

As demonstrated by the provisional unlawful presence waiver process, Hernandez-Serrano's proceedings, and *Avetisyan*, IJs and the BIA operate in a complex statutory, regulatory, and bureaucratic scheme. To that end, 8 C.F.R. §§ 1003.10(b) and 1003.1(d)(1)(ii) provide them with the tools to react flexibly to the varied circumstances of the cases before them. One such tool is the act of administrative closure. Of course, this tool can only be used when it is "appropriate and necessary for the disposition" in a case. However, "appropriate and necessary" is a capacious phrase that recognizes the variety of situations—*i.e.*, when a non-citizen is seeking

a provisional unlawful presence waiver or an adjustment of status—in which IJs and the BIA can exercise their independent judgment and discretion and decide to administratively close cases.

While the Attorney General has the authority to amend 8 C.F.R. § 1003.10(b) and 8 C.F.R. § 1003.1(d)(1)(ii) and remove the authority of IJs and the BIA to administratively close cases, *see* Appellate Procedures and Decisional Finality in Immigration Proceedings; Administrative Closure, 85 Fed. Reg. 52491 (Aug. 26, 2020), he "may not, 'under the guise of interpreting a regulation, . . . create *de facto* a new regulation' that contradicts the one in place."[5] *Morales*, 973 F.3d at 667 (quoting *Christensen v. Harris Cnty.*, 529 U.S. 576, 588 (2000)). And no matter how strongly the majority feels that the unambiguous language of §§ 1003.10(b) and 1003.1(d)(1)(ii) represents bad policy, this Court may not do the Attorney General's work for him. I would hold that *Castro-Tum* was wrongly decided, and that IJs and the BIA must exercise their independent judgment and discretion to determine whether, based on an application of the *Avetisyan* factors, administrative closure would be appropriate and necessary for the disposition of the particular case.

\* \* \*

The majority does not foreclose the possibility that an IJ could decide that administrative closure is appropriate and necessary for the disposition in a situation where a non-citizen's "removal proceedings itself legally bar[] him from obtaining an adjustment of status for which he appear[s] eligible under a statute or regulation," such as when a non-citizen "is eligible for adjustment of status but barred from obtaining it by § 212.7(e)(4)(iii)." Maj. Op. at 11. According to the majority, however, we lack authority to consider this argument because Hernandez-Serrano "did not argue before the IJ or the Board that administrative closure was

---

[5]Hernandez-Serrano explained in his reply brief that, although it was unlawful for the Attorney General to hold "that IJs and the BIA lack the general power to administratively close proceedings under *any* circumstances," the Attorney General "could have limited the scenarios in which proceedings could be administratively closed" by "[f]or instance" holding "that administrative closure is not appropriate when DHS merely wishes to exercise prosecutorial discretion (as occurred under the Obama administration), or that proceedings should not be administratively closed if the expected duration of the closure would exceed a certain period of time." Pet'r Reply Br. at 9. According to the majority "[t]hose concessions imply that the permanent closure of some 350,000 immigration cases was largely contrary to law." Maj. Op. at 8. However, as the Attorney General did not make those rulings, no such implication exists. But even if the closure of those cases was not "appropriate and necessary for the disposition," that has no bearing on the question of whether *Castro-Tum* incorrectly held that administrative closure is never appropriate and necessary for the disposition of immigration cases.

'necessary for the disposition' of his case within the meaning of §§ 1003.10(b) and 1003.1(d)(1)(ii) on the ground that the pendency of his removal proceedings itself legally barred him from obtaining an adjustment of status for which he appeared eligible under a statute or regulation." Maj. Op. at 11.

Even assuming that Hernandez-Serrano did not argue for administrative closure in the exact manner than the majority demands,[6] the majority's acknowledgement of the possibility that administrative closure could be appropriate and necessary for the disposition in other cases under §§ 1003.10(b) and 1003.1(d)(1)(ii) requires us to remand his case to the BIA. The BIA denied Hernandez-Serrano's appeal on the basis that *Castro-Tum* held as a matter of law that IJs and the BIA lack a general authority to administratively close cases. The question before us is whether the BIA applied the proper legal standard—whether it properly denied Hernandez-Serrano's appeal because *Castro-Tum* correctly held that §§ 1003.10(b) and 1003.1(d)(1)(ii) never provide IJs and the BIA with the discretion to administratively close cases or whether the BIA applied the wrong legal standard because *Castro-Tum* was incorrectly decided. Therefore, if there are situations where §§ 1003.10(b) and 1003.1(d)(1)(ii) do provide IJs and the BIA with the discretion to administratively close cases—and even the majority acknowledges that § 212.7(e)(4)(iii) might provide such a situation—then it was an error of law for the BIA to deny Hernandez-Serrano's appeal based solely on *Castro-Tum*'s holding. And if the BIA made an error of law by relying on *Castro-Tum*, then it is not for us to decide Hernandez-Serrano's appeal under the proper legal standard. Rather, "[i]t is well-settled that when an agency makes an error of law in its administrative proceedings, a reviewing court should remand the case to the agency so that the agency may take further action consistent with the correct legal standards." *Coal. for*

---

[6]Before the BIA, Hernandez-Serrano explained that he was "eligible for Special Juvenile Immigrant Status" but that his priority date meant that he could not yet adjust his status. (Br. of Respondent, A.R. ##8–9.) Hernandez-Serrano's priority date meant that his pending removal proceedings threatened to bar him from obtaining the adjustment of status for which he appeared eligible—in order to receive a Green Card as a SIJ, the juvenile must be physically present in the United States at the time they file the Form I-485. *See* 8 C.F.R. § 245.1(a). Therefore, after explaining that the proper standard for administrative closure was whether it was "appropriate and necessary for the disposition" of the case, Hernandez-Serrano requested "an administrative closure to allow for time for [him] to be eligible for adjustment of status." (Br. of Respondent, A.R. ##5, 11.) Thus, Hernandez-Serrano argued to the BIA that administrative closure was appropriate and necessary for the disposition of his case because the continuation of his removal proceedings would legally bar him from obtaining an adjustment of status for which he appeared eligible as a SIJ designee.

*Gov't Procurement v. Fed. Prison Indus., Inc.*, 365 F.3d 435, 473 (6th Cir. 2004) (citing *South Prairie Constr. Co. v. Local No. 627, Int'l Union of Operating Eng'rs*, 425 U.S. 800, 806 (1976)); *see also Saqr v. Holder*, 580 F.3d 414, 420 (6th Cir. 2009) (quoting *Cissell Mfg. Co. v. U.S. Dep't of Labor*, 101 F.3d 1132, 1136 (6th Cir. 1996)). Therefore, unless the majority can somehow hold that IJs and the BIA *never* have the authority to administratively close cases under §§ 1003.10(b) and 1003.1(d)(1)(ii), Hernandez-Serrano's case should be remanded.

## CONCLUSION

The unambiguous language of 8 C.F.R. §§ 1003.10(b) and 1003.1(d)(1)(ii) compels the conclusion that IJs and the BIA have the authority to exercise their independent judgment and discretion to determine that administrative closure is appropriate and necessary for the disposition of certain cases. Therefore, Hernandez-Serrano's case should be remanded for the BIA to make a decision without being constrained by the incorrect holding of *Castro-Tum*.[7] Accordingly, I dissent.

---

[7]Hernandez-Serrano's case should be remanded to the BIA and, considering that his priority date is now current, the BIA should remand the case to the IJ to adjudicate his application for adjustment of status. The majority is correct that an IJ's "exclusive jurisdiction to adjudicate any application for adjustment of status" is terminated once the removal proceedings have concluded. 8 C.F.R. § 1245.2(a)(1)(i). Accordingly, upon the denial of his petition before this Court, Hernandez-Serrano's application for adjustment of status may be adjudicated by USCIS.